WHARTON BRANCH v. THE STATE.

*No. 1254.   Decided December 18th, 1895.*

1.  **Aggravated Assault and Battery—Deadly Weapon—Pistol Used as a Bludgeon.**

    Where an indictment charges an aggravated assault and battery with a deadly weapon, and the proof was, that the assault was committed with a pistol, which was used as a bludgeon, the size and weight of the pistol must be shown, in order to establish its character as a deadly weapon.

**2. Same—Serious Bodily Injury—Evidence.**

An allegation of serious bodily injury, as aggravation for an assault, is sustained by proof that the injured party could not use his hands, on account of his injuries, for ten or fifteen days—had to carry one arm in a sling for several weeks, and that one of his fingers was stiffened.

**3. Where Defendant is Drunk at the Trial—Practice.**

If a defendant is drunk when placed upon trial, and that matter is called to the attention of the court promptly, as soon as discovered, it is the duty of the court to postpone the case until he is in fit condition to proceed with the trial, placing him in custody, if necessary, to get him sober; and, if the court refuses to postpone the trial, a bill of exceptions should also be saved to the action of the court.

**4. Same—New Trial.**

The question as to whether a new trial should be granted, because defendant was drunk when tried, is a matter within the discretion of the trial court, and will not be revised unless, it be shown that such discretion has been abused.

APPEAL from the Criminal District Court of Harris. Tried below before Hon. E. D. CAVIN.

This appeal is from a conviction for aggravated assault and battery, the punishment being assessed at a fine of $500, and six months' confinement in the county jail.

Defendant's counsel verbally asked a postponement on account of his mental and physical condition, which was refused.

The main features of the case are shown by the following testimony:

C. C. Emery, testified: "On the morning of the 16th day of November, 1894, my wife and I, and a young lady traveler, who had been placed in our charge, were passengers on the Houston & Texas Central railroad train, west bound out of Houston, and my wife and I were bound for Waco. My wife and the young lady and I, paid for and took seats in the chair car, the young lady taking a seat forward of those occupied by myself and my wife. Some time after the train left Houston, my wife left her seat beside me and went and sat by the young lady for the purpose of cheering her up, she being somewhat homesick, and left her hand-baggage in the seat beside me. My wife had the aisle seat and I was sitting in the one next to the window, reading. When my wife left her seat, the defendant, who was sitting in a seat immediately behind those occupied by myself and wife, leaned forward and said: (referring to the seat my wife had just vacated) 'I want that seat to put my feet in.' I replied to him, 'That seat is occupied by my wife and you cannot have it Then defendant reversed the seat anyway, throwing my wife's baggage to the floor. I turned the seat back and replaced my wife's things in it. Then the defendant called the porter, and told him he wanted the seat to put his feet in, and offered to pay the porter for the seat; the porter told him that the seat was paid for and occupied and he could not let him have it, and suggested that defendant could move to another part of the car where the seats were not all occupied, and then went away. After the talk with the porter, the defendant rose and went to the front end of the car where the smoking room was, and disapeared from my view, but soon returned, and as he approached where I was I noticed that he put his hand inside

35th Crim. App.—20.

his vest, but I paid no particular attention to it, as I was reading. When he got just behind me, he struck me with his fist and as I turned round he drew a pistol and struck me on the head with it. As quickly as I could, I threw up my hands and after the first two or three blows, I caught the most of the remainder of the licks on my hands and lower arms, and thus broke the force of them off my head. The result of the blows was, that I had two gashes cut in my head which bled profusely, my hands were cut and bruised up, my arms were cut and bruised and skinned to the elbows. For ten or fifteen days I could not use my hands and I had to carry one arm in a sling for several weeks. I have not yet recovered the use of the little finger of my right hand which is partially stiff and is still painful. The defendant continued to strike me with the pistol until my wife and a gentleman named McDonald, who was in the car, and he is here as a witness, took hold of him and made him desist."

This witnesses' testimony was corroborated by that of Mrs. Emery and Duncan McDonald.

Defendant testified: "I was sitting down by Emery, and he got angry and ordered me to move my seat, and he struck me, and I struck him with my open hand. This lady who has been on the stand then came up and said Emery was her husband, and asked me not to strike him any more, and I desisted and turned to go away, when some one called out, 'Look out, he will shoot you!' I thereupon drew my pistol and commenced to strike him with it. You have heard about animal magnetism; well, I'll tell you about animal magnetism. I caught hold of him around the back of the neck with one hand and pulled him to me and struck him with the other. It was my intention to kill him, but his wife saved his life. She interposed, and I told her I did not know that he belonged to her party. I was going to bundle him up and throw him out of the window. I knocked him down and made him get into a little space no higher than this platform I now sit on (referring to the platform the witness chair sits on in the court room). Emery talks about me hurting his hands; the fact is, he hurt his hand himself by accidentally striking it on the back of the seat."

Defendant's counsel, as one ground of the motion for new trial, urged that during the trial defendant was in such mental condition as to be unable to afford them any assistance in the management and trial of the case. This motion was overruled.

*Perryman & Bullitt, Lanier & Kirby, C. F. Stevens* and *W. L. Douglass*, for appellant.—1. The evidence did not show an assault with a deadly weapon. Wilson v. State, 34 Tex. Crim. Rep., 64; Halsell v. State, 29 Tex. Crim. App., 22; Jenkins v. State, 30 Tex. Crim. App., 379; Melton v. State, 30 Tex. Crim. Apps., 273; Pierce v. State, 21 Tex. Crim. Apps., 548; Hunt v. State, 6 Tex. Crim. Apps., 663; Key v. State, 12 Tex. Crim. Apps., 506.

2. The evidence does not show that defendant inflicted upon Emery serious bodily injury.

3. At the trial and during the whole of the trial defendant was mentally incapable of understanding the proceedings, or to assist in conducting his defense. 1 Bish. Crim. Proc., § 950c; Taffe v. State, 23 Ark., 34; 1 Bish. Crim. Proc., §§ 265, 273.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, Presiding Judge.—Appellant was convicted of an aggravated assault and battery, and his punishment assessed at a fine of $500 and imprisonment in the county jail for six months. The indictment contains two grounds of aggravation: First, that the assault and battery was made with a deadly weapon; second, that serious bodily injuries were inflicted upon the prosecutor. The proof shows that a pistol was used as a bludgeon, the size and the weight of the pistol not being shown. This must be done, when the pistol is shown to have been so used, in order to make proof that it was a deadly weapon. · Hunt v. State, 6 Tex. Crim. App., 663; Wilson v. State, 15 Tex. Crim. App., 150; Pierce v. State, 21 Tex. Crim. App., 540. The next question presented is whether or not the wounds inflicted were serious. The testimony on this point is: "The result of the blows was that I had two gashes cut in my head, which bled profusely. My hands were cut and bruised up, and my arms were cut and bruised and skinned to the elbows. For ten or fifteen days I could not use my hands, and I had to carry one arm in a sling for several weeks. I have not yet recovered the use of the little finger of my right hand, which is partially stiff and is still painful." The injury inflicted upon the finger was very serious, exceeding that which was inflicted upon the arm, which, according to the evidence, was skinned from his hand to his elbow. The finger is still stiff. We view this as a serious matter. This opinion is not at all in conflict with the definition of serious bodily injury given by this court in the case cited in appellant's brief, to-wit: George v. State, 21 Tex. Crim. App., 315. In this case, during the progress of the trial, counsel for appellant presented a verbal motion to the court asking for a postponement of the case on account of the mental and physical condition of appellant. After the conviction of appellant, his counsel presented a motion for a new trial, and one of the grounds assigned was that appellant, during the trial, was in such a mental condition as to be unable to afford any assistance to his counsel in the management and trial of the case, and this was supported by affidavits showing that appellant, from some business complications, and from the use of stimulants, was not in his normal state at the time of the trial, but was laboring under some infirmity of mind on account of intoxicating liquors, and; perhaps, from other causes. It appears from the record in this case that this condition was manifest to counsel during the progress of the trial, and that he made a verbal motion to the court for a postponement, but it does not appear that he saved a bill of exceptions to the action of the court. This should have

been done. Willson's Crim. Stats., § 2187. Concede, however, that the question was properly presented in a motion for new trial, yet such a matter as a postponement the trial or a new of trial granted in such a case is within the sound discretion of the court trying the cause. If a party is drunk when placed on trial, and that matter is called to the attention of the court promptly, as soon as it is discovered, it would unquestionably be the duty of the court to postpone the case until such time as he should be in a fit condition to proceed with the trial, placing him in custody, if necessary, to get him sober. In this case, while affidavits were presented showing that appellant from some cause was, perhaps, not in as good shape for trial as if he had been duly sober, yet this matter, as stated before, was in the discretion of the court, and we do not see, in this case, that, in overruling the motion for a new trial on this ground, the court abused its discretion. So far as the preparation for trial is concerned, and the procurement of testimony in this case, about which something is said in the application, in connection with appellant's condition at the trial, for aught that appears, these acts of preparation and procurement should have been taken long anterior to the trial, when it is not pretended that the appellant was laboring under any infirmity. The judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion at the Austin branch, May 11th, 1896.—Reporter.]