## J. R. BEST v. THE STATE.

### No. 959. Decided March 15, 1911.

**1.—Murder—Manslaughter—Self-Defense—Charge of Court—Resort to Other Means.**

Where defendant was convicted of manslaughter and allotted the minimum punishment, no other question will be reviewed except that of self-defense, and where the court's charge required defendant to resort to all other means before acting upon self-defense, the same was reversible error, the evidence showing that the deceased made a violent attack upon the defendant with a deadly weapon.

**2.—Same—Charge of Court—Self-Defense—Continuing Danger.**

Where, upon trial of murder, the evidence showed that deceased attacked defendant with a knife and that there was no appreciable intervening time between the shots fired by the defendant in self-defense the court should have submitted a requested instruction that defendant had a right to shoot as long as danger appeared to him.

**3.—Same—Charge of Court—Presumption—Deadly Weapon.**

Where, upon trial of murder, the evidence showed that deceased attacked defendant with an open knife the blade of which was three inches long, threatening to kill him, the court should have charged that where a deadly weapon is used the law presumes that death or serious bodily injury was designed.

Appeal from the District Court of Baylor. Tried below before the Hon. Jo A. P. Dickson.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*T. T. Bouldin* and *L. W. Dalton,* for appellant.—On question of not charging presumption to inflict death or serious bodily injury where deadly weapon was used: Hudson v. State, 59 Texas Crim. Rep., 650, 129 S. W. Rep., 1125; Yardley v. State, 50 Texas Crim. Rep., 644, 100 S. W. Rep., 399; Spencer v. State, 59 Texas Crim. Rep.,

217, 128 S. W. Rep., 118; Duke v. State, 56 Texas Crim. Rep., 502; Clark v. State, id., 293; McMichael v. State, 49 Texas Crim. Rep., 422.

On question of court's error on charge of self-defense that defendant must resort to all other means: Kendall v. State, 8 Texas Crim. App., 569; Ainsworth v. State, id., 532; Robins v. State, 9 Texas Crim. App., 666; Hill v. State, 10 Texas Crim. App., 618; Foster v. State, 11 Texas Crim. App., 105; King v. State, 13 Texas Crim. App., 277; Risby v. State, 17 Texas Crim. App., 518; Williams v. State, 22 Texas Crim. App., 497; Casner v. State, 57 S. W. Rep., 821.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was given the minimum punishment for manslaughter. The testimony is very conflicting as to the beginning of the difficulty between deceased and appellant. There had been differences between them growing out of financial matters. Deceased had gone on appellant's bond who had qualified as survivor of the community estate of himself and his deceased wife, who was the sister of the deceased. Deceased wanted to become the guardian of the property of the children of his deceased sister and also the children of appellant. Without going into the details of these matters, the engendered feelings seemed to have culminated in the fact that appellant claimed that there had been a settlement between them, and deceased owed him $200, which was admitted by the deceased. Subsequently deceased wrote appellant a letter in which he claimed he only owed him something like $40. The evidence shows numerous threats made by deceased against appellant's life on account of these troubles. The details of these threats and incident matters are not necessary to be mentioned. On the morning of the homicide, which was subsequent to the reception of the letter by appellant from the deceased, appellant was repairing one of his gates which it is indicated that the deceased had torn down. After fixing the gate he went up the fence something like a hundred yards, where deceased was plowing. When deceased reached the end of the row next to the fence a conversation occurred between them in regard to this letter and the matters incident to it, as well as some other matters. The deceased went to the fence where appellant was standing and where the difficulty shortly afterwards occurred. The different statements of the deceased was put in evidence by three or four witnesses. These accounts, as found in the record, differ considerably as to what deceased said in regard to their trouble. Among other things the deceased said when he called him to the fence and asked him about the letter, and referred to the fact that they had formerly agreed as to the amount due, that during the conversation the appellant called him a liar, or damn liar, and perhaps a damn son-of-a-bitch, and that deceased struck at him, and appellant then stepped back, only receiving a light

touch of the blow somewhere about the arm or wrist, and pulled his pistol and fired three shots rapidly. The pistol was an automatic pistol. One of the shots took effect, from which deceased died. Appellant's version of the matter was that when deceased came to the fence they were discussing the matter, deceased called him a damn liar or son-of-a-bitch and got over the fence, pulled and opened his knife and advanced upon him with the threat to cut his guts out; that thereupon he pulled his pistol and fired; that he fired as rapidly as his automatic pistol would fire, and after the first shot he did not see deceased until after the last shot. This is a very brief statement of the matters, but so far as the questions are concerned we think that it is sufficient to present them.

1. The jury having convicted of manslaughter and allotted the minimum punishment, it is unnecessary to review any of the questions except as they relate to appellant's theory of self-defense. The court charged the jury on this issue as follows: "Homicide is justifiable in the protection of the person from any unlawful and violent attack, and in such case all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the act of making such unlawful and violent attack, or while the person killed is doing some hostile act or making some hostile demonstration that would, viewed from the standpoint of the slayer, produce in his mind a reasonable fear or expectation of death or of some serious bodily injury." After then charging the jury that it is not necessary for the appellant to retreat under such circumstances, he applied the law to the facts as follows: "Applying the foregoing definitions to the facts of this case upon the issue now submitted to you, you are charged that defendant would be justified in killing the deceased if it is shown to have been done to prevent the deceased from murdering or maiming him, or if it is shown that at the time of the killing, or immediately preceding such killing, deceased had made or was in the act of making some hostile demonstration toward the defendant such as would produce in his mind a reasonable fear or expectation of death or of some serious bodily injury, etc." Exception was reserved to this charge, and we think correctly. It is not the law in Texas that in all unlawful and violent attacks made by the deceased upon the accused that all other means must be resorted to for the prevention of the injury. Wherever the deceased makes an assault or threatens an attack upon the accused which may end in his death or serious bodily injury, he does not have to resort to any other means. He can kill, and by the use of any means within his power. It is true that another article of the Penal Code provides that under certain circumstances other than those mentioned, other means must be resorted to before killing, but the charge given is entirely too broad, and it covers any and all unlawful acts where the party's life may be involved or serious bodily injury threatened. We do not care to go into a discussion further of this question. Upon an-

other trial of this case the law of self-defense should be applied under the facts. We are further of opinion in this connection, in view of another trial, that the charge with reference to resorting to all other means is not involved in this case. If appellant brought about the occasion for killing the deceased, or provoked him into striking him so that he might have an excuse for killing him, the law of self-defense would not be in the case. This is a question of fact, however. Under the State's theory, the question of provoking the difficulty would be in the case. Under that of the appellant it clearly would not be. From the State's standpoint, appellant called the deceased out and called him a liar and a son-of-a-bitch in regard to certain matters understood by the parties at the time; whereupon the deceased struck at him with his hand or fist, and appellant shot him fatally. Under appellant's theory, he was asking for an explanation of certain matters, deceased became enraged and made an attack upon him with a deadly weapon, or with a weapon that is shown to have been deadly, to wit, a knife with a blade about three inches long; and appellant thereupon shot and killed the deceased. Appellant was entitled to an untrammeled and clearly defined charge on the right of perfect self-defense, unincumbered by a statement that he had to resort to any or all other means before killing.

2. Another complaint is made of the charge of the court, as well as the failure to give requested instructions to the effect that appellant had a right to shoot as long as danger appeared to him. We are of opinion, under the facts of this case, this charge should have been given. If deceased attacked appellant with his knife, as the testimony of the defendant shows, then he had the right to shoot until all danger was passed, and all the witnesses show that the pistol fired so rapidly that there was no appreciable intervening time between the shots. They were fired as rapidly as it was possible for an automatic pistol to be shot. Appellant testified that after the first shot was fired he did not see the deceased until after he fired the last shot. It is sometimes rather a close question as to whether this charge should be given or not. This matter is sometimes rendered uncertain by the intervening time between the shots that were justifiable and those that may not have been justifiable, as in the event of the retreat of the deceased after abandonment of the difficulty by him; but where the shooting is so close and the facts are all in such juxtaposition as to be practically if not actually inseparable, the charge should be given to the effect that the party has a right to shoot until the danger to his life or body ceased.

3. The court failed to charge, and appellant requested an instruction to the effect that where a deadly weapon is used the law would presume that death or serious bodily injury was designed. This charge should have been given. Appellant's testimony shows that the deceased was approaching him with an open knife, the blade of which was three inches long, and threatening to kill him, or as he expressed

it, "to cut his guts out;" that he backed as far as he could and ordered deceased not to come upon him, and he did come, and he fired and continued to fire as rapidly as he could pull the trigger. Under this state of facts, article 676 of the Penal Code should have been given, which provides: "When the homicide takes place to prevent murder, maiming, disfiguring or castration, if the weapons or means used by the party attempting or committing such murder, maiming, disfiguring or castration, are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury." Appellant's testimony raised this issue and the requested instruction should have been given submitting it. As all other issues, except manslaughter and self-defense, have been eliminated by the verdict of the jury, it is unnecessary to discuss other matters.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*