## E. R. FINCH v. THE STATE.

No. 2346. Decided March 19, 1913

Rehearing denied June 25, 1913.

**1.—Murder—Child Witness—Discretion of Court.**

Upon trial of murder, there was no error in refusing to permit the six-year-old son of defendant to testify in his father's behalf, the court holding that he was too young to testify. This is a matter of discretion for the trial court. Following Anderson v. State, 53 Texas Crim Rep., 341.

**2.—Same—Evidence—Cross-examination—Husband and Wife—Leading Questions.**

Where, upon trial of murder, the cross-examination of defendant's former wife was legitimate according to the qualifications of the bill of exceptions, there was no error.

**3.—Same—Charge of Court—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence was sufficient, under a proper charge of the court, to sustain a conviction of murder in the second degree, there was no error.

**4.—Same—Child Witness—Discretion of Court.**

Under article 788, Code of Criminal Procedure, it is left largely to the court's discretion to test the qualifications of a child witness, and where there was nothing to show that the court abused his discretion, there was no error. Following Zunago v. State, 63 Texas Crim. Rep., 58.

**5.—Same—Imperfect Self-defense—Manslaughter.**

The trial court should not ignore the phases of manslaughter which may arise on account of imperfect self-defense, but when the evidence does not raise such an issue and the court's charge on self-defense placed no limitation on defendant's right thereto, there was no error.

**6.—Same—Going Armed—Charge of Court.**

Where, upon trial of murder, the evidence showed there was an agreement between the parties to meet in their shirt-sleeves unarmed and that deceased did go unarmed, but defendant carried a pistol with which he killed deceased, there was no error in the court's failure to instruct the jury in regard to defendant's right to take arms with him to the place of meeting.

**7.—Same—Charge of Court—Manslaughter—Pain.**

Where, upon trial of murder, the evidence raised the issue of an assault causing pain and the court submitted this in his charge on manslaughter, there was no error.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The following statement by the Assistant Attorney-General is substantially correct: Appellant was the former husband of Mrs. Della Finch, by whom he had a boy six years of age, who at the time of this difficulty was residing with his mother, Mrs. Finch. Appellant and Mrs. Finch at the time of the difficulty had been divorced about a year and the deceased had been paying court to Mrs. Finch, and at the time he was killed was engaged to her. On the evening of the killing appellant went to the house where Mrs. Della Finch resided and had a conversation with her, and while there learned that the deceased, Boatner, was paying some attention to her and that he had induced her to move from the Colo. hotel to a boarding house near where he, Boatner, lived. After appellant left the place where Mrs. Finch resided he called over the phone. At this time the deceased, Boatner, was at the place where Mrs. Finch resided and he was told by Mrs. Finch that she was talking to her former husband, appellant. The deceased then took the receiver from Mrs. Finch and as testified to by Mrs. Finch, asked appellant if he would see him, or at least he made arrangements with appellant to meet him at some point and talk the matter over. Mrs. Finch testified that she heard the deceased speaking over the phone supposedly to appellant; that he made arrangements to see appellant at a certain saloon, in his shirt sleeves and without arms, and used the expression, "This is fair enough, isn't it?" In other words, Mrs. Finch testified that the conversation, so far as deceased was concerned, seemed to be intended to bring about a peaceable meeting. During the trial Mrs. Finch was placed upon the stand in behalf of the appellant, to whom she had be-

come reconciled since the killing. The evidence showed that after this conversation had at the place where Mrs. Finch resided, the deceased did meet appellant near the postoffice; that appellant was sitting in his buggy at the time of the shooting; that from his buggy he shot the deceased, and as the deceased ran off he shot him two or three times, most of such shot taking effect in the back of the deceased. Appellant's contention was that the deceased jumped into his buggy and choked him and that this brought about the shooting; that he first knocked deceased out of his buggy and as he thought deceased was approaching him again, he continued to shoot; that at this time he was rendered incapable of any kind of reason and that he next found himself a considerable distance from the buggy out in the streets bare-headed with the pistol in his hand; that he then returned to his buggy and drove off.

*W. G. Love* and *E. T. Branch* and *Brockman, Kahn & Williams,* for appellant.—On question that court should not ignore phases of manslaughter which may arise on account of imperfect self-defense: Brown v. State, 54 Texas Crim. Rep., 121; St. Clair v. State, 49 id., 479; Nix v. State, 45 id., 504; Franklin v. State, 34 id., 286; Collings v. State, 47 id., 115; Johnson v. State, 63 id., 50.

On question that court's charge on manslaughter was too restrictive: Smith v. State, 65 Texas Crim. Rep., 65, 148 S. W. Rep., 699; Ware v. State, 152 S. W. Rep., 1074; Ware v. State, 49 Texas Crim Rep., 413; Gilespie v. State, 53 id., 167.

On question of right of going armed: Keith v. State, 50 Texas Crim. Rep., 63; Mitchell v. State, 50 id., 180; Borden v. State, 42 id., 648; Duke v. State, 61 id., 19.

On question of excluding child witness: Scroggins v. State, 51 S. W. Rep., 232; Petterson v. State, 47 Ga., 524; Munger v. State, 57 Texas Crim. Rep., 384, 122 S. W. Rep., 874; Reyna v. State, 75 S. W. Rep., 25; Zunago v. State, 63 Texas Crim. Rep., 58.

On question of cross-examination of former wife in asking leading questions: Conn v. State, 11 Texas Crim. App., 390; Tyson v. State, 14 id., 388; Jones v. State, 33 Texas Crim. Rep., 7; Hinton v. State, 65 Texas Crim. Rep., 408, 144 S. W. Rep., 617.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at twenty years confinement in the penitentiary.

The first bill of exception complains of the action of the court in refusing to permit the six-year-old son of appellant to testify in the case. It is shown by the bill the testimony of this witness would have been material in reducing the offense from murder in the second degree to manslaughter, if he would have testified as is alleged in the bill. In the case of Anderson v. State, 53 Texas Crim. Rep., 341, it is said:

"It has been uniformly held by this court and is, as we understand, the rule which obtains everywhere, that the matter of passing on the competency and understanding of the witness is left largely to the sound discretion of the trial court. The demeanor and manner of the witness on the stand is often as pertinent a factor in determining the mental capacity and competency of a witness as anything else." Taking this rule into consideration, we can not say that the court abused his discretion in rejecting the testimony of this six-year-old child.

In the only other bill of exception in the record it is claimed that the court erred in permitting the State to ask Mrs. Della Finch certain questions which are alleged to be leading. The record shows that appellant introduced Mrs. Finch as a witness; that she was formerly his wife, and had her testify to certain facts in the case, and we think the questions were perfectly legitimate in cross-examination of said witness, especially so under the qualification of the court appended to this bill, which is accepted by appellant without objection, and filed as a part of the record in this case.

These are all the bills of exception in the record,—no special charges were requested, but the remainder of the motion complains of the charge as given. Without taking up each ground in the motion, we will state we have read the charge as given, and the grounds of objection, and we are of the opinion that the charge fairly submitted each issue raised by the evidence. By selecting one paragraph alone, and criticizing it, the objections might appear tenable, but when read as a whole, no grounds for such objections exist. The charge fairly submits manslaughter and self-defense, under the evidence adduced, and we must consider the evidence in each case in passing on the charge, and under the evidence adduced in this trial the objections made present no error that should call for a reversal of this case.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### June 25, 1913.

HARPER, Judge.—Appellant has filed a motion for rehearing in which he assigns four grounds as reasons why he thinks this court was in error in not reversing and remanding this cause.

The first is that error was committed in not permitting the six-year-old son of appellant to testify. The rule has always been in this court, that this is a matter within the sound discretion of the trial court, and unless the record disclosed that he abused his discretion and acted arbitrarily, we would not review the matter. The trial judge sees the child, hears him testify on his examination, and while we always loath to exclude any legitimate testimony, and if this child was a competent witness his testimony would be admissible, yet our Code of Criminal Procedure provides in article 788, that children who do not appear to have sufficient intelligence to relate the transaction, or who do not understand

the obligation of an oath, are not competent witnesses; and in Williams v. State, 12 Texas Crim. App., 127, it is held that the method of testing the qualifications is confided to the trial judge, and whether or not a child is competent is committed to his sound discretion. While we thoroughly agree with the rule of law as announced in the cases cited by appellant in his brief, yet again, after carefully reading the answers of this child to the questions propounded to him, we are not prepared to hold that the court acted arbitrarily in the premises, or abused his discretion in holding the child an incompetent witness under our statute. In the case of Zunago v. State, 63 Texas Crim. Rep., 58, the rule is correctly stated and authorities cited. If appellant was not satisfied with the ruling of the court he should have asked that the jury be retired, and had said child examined as to his ability to relate the transaction, and that he in fact understood the obligations of an oath by the answers given, and then we would be more capable of passing on the question. The bill does not purport to give the testimony of the child as to the transaction, but a mere statement that he would have testified that deceased "choked his papa first before his papa shot."

We agree with those decisions cited by appellant wherein it is held that "the trial court should not ignore the phases of manslaughter which may arise on account of imperfect self-defense." (Brown v. State, 54 Texas Crim. Rep., 121.) But they have no application to this case. It was perfect self-defense, if the jury accepted the testimony of defendant. He testified that after some conversation, deceased jumped at him and caught him by the throat; that he knocked him loose, when deceased arose with his right hand out of sight and said, "You son-of-a bitch, I will kill you"; that he then reached and got his pistol and shot. This presented perfect self-defense and the court so instructed the jury, telling them:

"A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"If from the evidence you believe the defendant killed the said Bert Boatner, but further believe that at the time of so doing the deceased had made or was making an attack on him which, from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him."

The court in his charge, in applying the law to the case, placed no limitation on appellant's right of self-defense, and those cases which hold that where the court places a limitation on self-defense, he must

then instruct as to what offense he would be guilty under such circumstances, have no application. If the court had, in his charge, limited this right under any condition or circumstance, the cases cited by appellant would apply.

Appellant asked no special charge in regard to his right to taking arms with him to the place, and under such circumstances it has been held not to be error to fail to so instruct the jury, where the court gives a charge on perfect self-defense unfettered and unlimited. But in this case, had such request been made, it should not have been given for the testimony of Mrs. Finch would show "an agreement to meet in their shirt sleeves unarmed." Deceased did go to the meeting, unarmed, in his shirt sleeves, while appellant carried a pistol, and yet there had been no prior trouble between them.

The charge on manslaughter is not too restrictive. It instructed the jury that "an assault causing pain" would be adequate cause, and this is the adequate cause raised by the testimony.

The motion for rehearing is overruled.

                                        *Overruled.*