NATHAN BRISCOE v. THE STATE.

No. 5804.   Decided May 19, 1920.

**1.—Murder—Evidence—Threats—Declarations of Defendant.**

Upon trial of murder it was reversible error to admit in evidence the declarations of defendant made sometime during the day of the homicide that he would kill a man before he would be done that way, and that there was no reason to believe or suspect that defendant, at the time that he made the declaration, was referring to the deceased, and that it had since been learned that defendant was referring to another man, the burden being upon the State to show that the deceased was meant or included.   Following Fuller v. State, 54 Texas Crim. Rep., 454, and other cases.

**2.—Same—Husband and Wife—Cross-Examination.**

Where, upon trial of murder, the wife of defendant had testified in his behalf, it was improper to cross-examine her on new matter not relevant to the matters brought out on direct examination.

**3.—Same—Evidence—Conversation Over Telephone.**

Where, upon trial of murder, testimony with reference to a conversation over the telephone between two of the witnesses was not material to any issue in the case, the same should not have been admitted.

**4.—Same—Evidence—Clothes of Deceased—Knife of Deceased.**

Where, upon trial of murder, the attitude of the parties toward each other during the difficulty being an issue in the case, there was no error in admitting in evidence the clothing worn by deceased at the time of the shooting and the knife of the deceased, which was in a badly crippled condition.

**5.—Same—Evidence—Physical Condition of Deceased.**

Upon trial of murder, where defendant pleaded self-defense; that the deceased was a larger, heavier man than himself, there was no error in admitting testimony that the deceased had more or less defective eyesight. was seventy years of age and large and clumsy.

Apepal from the District Court of Commanche.   Tried below before the Honorable J. H. Arnold.

Appeal from a conviction of murder.   Penalty: fifty years imprisonment in the penitentiary.

The opinion states the case.

*Calloway & Calloway* and *Eidson & Eidson*, for appellant.—On question of alleged threats by defendant:   Holley v. State, 39 Texas Crim. Rep., 307; Duke v. State, 133 S. W. Rep., 434; Sorrell v. State, 169 S. W. Rep., 306, and cases stated in opinion.

On question of cross-examination of wife: Johnson v. State, 148 S. W. Rep., 330; Hamilton v. State, 36 Texas Crim. Rep., 372. Finks v. State, 209 S. W. Rep., 156.

On question of telephone conversation: Finks v. State, *supra*; Williford v. State, 36 Texas Crim. Rep., 414.

On question of clothes of deceased: Huey v. State, 197 S. W. Rep., 202; Dozier v. State, 199 S. W. Rep., 287.

On question of physical condition of deceased: Clayton v. State, 201 S. W. Rep., 172; Cole v. State, 48 Texas Crim. Rep., 445; Brownlee v. State, 48 id., 410.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of bloody clothes: Milo v. State, 59 Texas Crim. Rep., 196; Hiles v. State, 79 id., 1; Welch v. State, 66 id., 525; Satterwhite v. State, 78 id., 309.

LATTIMORE, JUDGE.—In this case appellant was charged with the murder of one jesse Burks, and upon conviction his penalty was fixed at fifty years confinement in the penitentiary.

Appellant and deceased were neighboring farmers. Deceased owned a binder, and shortly before the homicide, claimed to have lost therefrom a chain. Some time prior to the killing, appellant was engaged in cutting his grain with a binder which belonged to a Mr. Lindsey and the brother of deceased. While so engaged, the parties broke a link in a similar chain. Not being able to further operate said machine, Mr. Lindsey asked appellant to go to the house of deceased and get from him a link with which to mend the broken chain. Appellant did so, and according to the witness, returned with one link; but in the meantime, the parties had broken another link, and could not further operate the machine. Witness Nelse Briscoe, who was assisting in said cutting, testified that he went that night on horseback down to the place of a Mr. Tunnell, and got some links, with which the chain was again repaired, and the cutting continued. When appellant returned from going after the link at the house of deceased, he reported that deceased was not there, but that he had gotten the link out of his tool box. Very soon thereafter deceased began claiming that some one had stolen a chain from his binder, and seems not only to have made that statement to several parties, but after hearing that appellant had been to his house and gotten a link out of his tool box, deceased came and examined the chain on the Lindsey binder, and claimed that it was his, and stated that the person who got the link stole the chain. To some of the witnesses, deceased made a direct charge that appellant had stolen his chain. Appellant testified that on the day before the homicide, he had a conversation with deceased, in which he was accused of stealing the chain. He said that he told deceased he was mistaken, and that he could prove it. He further said that he told deceased that he did get the one link, and that

deceased then said, "Yes, and you got the chain too." Appellant further says that he explained to deceased how they fixed the chain, and told him that Nelse Briscoe got on his work-horse and rode down to Doc Tunnell's in the night and got the links with which to fix it He says that deceased asked him if he could prove that, and he told him that he could prove it by Nelse Briscoe; that deceased then said if he would bring Nelse and have him state as appellant claimed, he would accept that statement. Appellant said that he then promised to get Nelse and bring him to prove that the chain on Lindsey's binder was not the chain of deceased, but was a chain that they had repaired themselves. Soon after parting with deceased on this occasion, appellant said he met the witness Talley, who told him that deceased had made very heavy threats against him. It appears from the evidence, that the next day appellant went to the town of Gustine, some seven or eight miles distant, where Nelse Briscoe was staying, got Nelse, and went with him and a young man named Sewell, who had also been present when the chain was broken and mended, to the farm of deceased, and then out into the field where deceased was at work. Before going, appellant placed a pistol in his pocket, giving as his reason for so doing, that he did not know what deceased might attempt to do to him; that he was a much smaller man than deceased; not physically strong, and no match for deceased in a personal encounter, if deceased should attack him. When appellant and the two men who were with him approached deceased, the fatal difficulty immediately ensued, and deceased was shot—once in the hand or arm, once in the side, and once in the back from the effects of which he died at once. The account given of the occurrence by the State's witnesses, and those for appellant, were widely different, and as the case must be reversed, we express no opinion as to the evidence pro or *con*. Appellant and his witnesses claimed that deceased immediately became angry, and attacked appellant, forcing him backward quite a distance, cutting at him with a knife, and that appellant shot him in self-defense.

It appears from bill of exceptions No. 3, that on the day of the homicide, and about eleven o'clock—the homicide being about four o'clock—and while in the town of Gustine, some seven or eight miles from the scene of the killing, appellant was heard to say "I would kill a man before I would be done that way." The witness who gave this testimony said that appellant was across the street from him, and talking to the justice of peace—a man named Gray, and that he had no reason to believe or suspect that appellant was referring to deceased, and that he had since been informed that appellant was referring to another man. In all the cases known to us where a general threat of the accused is introduced by the State, it is held error unless the State also show that the threat is directed toward the injured party, or embraced such person. In his qualification to this bill of exceptions, the trial court lays stress on the fact that it was only a

few hours before the killing, and appellant made no explanation of this statement. This does not help the matter. The burden is on the State to show that deceased was meant or included, and not on the appellant to show that he was not meant or included. On another trial, unless there be evidence showing substantially that the threat was directed at deceased, it should not be admitted. Fuller v. State, 54 Texas Crim. Rep., 454; Garrett v. State, 52 Texas Crim. Rep., 258; Hall v. State, 43 Texas Crim. Rep., 259; Fossett v. State, 41 Texas Crim. Rep., 400; Holley v. State, 39 Texas Crim. Rep., 307. In the Fossett case just cited, the threat was made only a few moments before the homicide. In many of the cases, the threats were made nearer to the time of the killing than the one in the instant case. The nearness of the time does not seem to be sufficient to justify the admission of such threats, unless there be something else either connected therewith, or appearing in the evidence elsewhere, which would make it reasonably certain that the injured party was meant or included in the threat.

The cross-examination of appellant's wife, we think, went too far. By none of the authorities does it seem to be held that in cross-examination may new matter be gone into by the State. The bill of exceptions sets out in question and answer, the examination and cross-examination of Mrs. Briscoe, and much of the cross-examination appears to be on new matter not relevant to the matters brought out on direct examination. In his qualification of this bill, the court below says: that no objection was made to any of the cross-examination, except that portion of her testimony which related to the question addressed to her as to what Mrs. Lindsey had told her that morning about Mr. Burke's inquiry as to the chain, and this conversation was drawn out by the defendant. The explanation of the trial court is somewhat lengthy, and we are unable to tell therefrom just what was objected to. In view of another trial, unless appellant goes further in his examination of this witness than was done in the instant trial, Mrs. Briscoe should not be asked on cross-examination as to threats made by appellant to her that deceased would never accuse another man of getting his chain, either for the purpose of impeachment, or to elicit such fact as original testimony. Secs. 152, 153, Branch's Penal Code.

We are unable to see how the testimony, as to what was said by Nelse Briscoe over the telephone, in a conversation supposed to have been had with Mrs. Leona Parker, was material to any issue in this case. The court undertook to limit the same as affecting only the credibility of said Briscoe as a witness, but a witness cannot be impeached upon denial thereof by proof of immaterial statements. In the absence of further light on the subject-matter involved in said conversation, the disconnected part of which at one end of the telephone used, was testified to, said testimony should not be admitted.

The attitude of the parties toward each other during the difficulty being an issue, we are unable to say that it was error to admit in testimony the clothing worn by deceased at the time of the shooting. Nor do we think any error appears in the introduction of the knife of deceased. It was shown to be in a badly crippled condition, and in view of the fact that appellant claims that deceased attacked him with his knife, and cut his clothes in several places, the condition of the knife, as seen by the jury, might have a material bearing on this issue.

The objections urged to proof of the physical condition of deceased, including his sight, do not seem to us tenable. Deceased was a man about seventy years of age—large, clumsy, and shown to have eyesight more or less defective. Appellant had known him for forty years. Appellant claimed that he shot in his necessary self-defense, against an attack then being made on him by deceased. The physical condition of deceased as known to appellant, was material for what it is worth as shedding light on what appellant believed about his danger at the time of the shooting.

This disposes of the material matters raised on appeal.

For the errors mentioned, the judgment of the trial court is reversed, and the cause remanded.

*Reversed and remanded.*