# FEBRUARY, 1922

NATHAN BRISCOE V. THE STATE.

No. 6248. Decided June 8, 1921.

Rehearing denied February 1, 1922.

### 1.—Murder—Evidence—Rebuttal—Defective Vision.

Where, upon trial of murder, the defendant claimed that deceased made an attack upon him of such a character as did not comport with the ordinary conduct of one of his age and defective vision, there was no error in admitting testimony in rebuttal that deceased's eyesight was very bad, and that he could not recognize persons close to him, etc.

### 2.—Same—Evidence—Pocket Knife—Rebuttal.

Where, upon trial of murder, the defendant claimed that deceased attacked him with a knife and cut his clothes, which were exhibited to the jury, and it was a controverted question whether deceased ever opened his knife, and it was the theory of the State that defendant cut his own clothes, there was no error in permitting the State in rebuttal to prove that when defendant was arrested he had a very sharp knife in his possession, whereas the evidence showed that the closed knife found near the body of deceased was very dull and in a generally delapidated condition.

### 3.—Same—Evidence—Bloody Clothes—Practice in Trial Court.

Where the trial judge certified that the evidence with reference to the introduction of clothing worn by deceased at the time of the homicide was substantially the same as upon the former trial, to show the attitude of the parties, etc., there was no reversible error.

### 4.—Same—Evidence—Self-Defense—Right of Going Armed—Requested Charge.

Where, upon trial of murder, the record showed on appeal that a full, fair, and untrammeled charge on self-defense, both from attack and on the ground of communicated threats was submitted to the jury in the main charge, and this was supplemented by a special charge on the same subject, and there being no instructions in any way restricting self-defense, there was no necessity for giving the requested charge that defendant had the right to seek an explanation and that his going armed would not affect his right of self-defense. Following Willeford v. State, 42 S. W. Rep., 972, and other cases.

**5.—Same—Instrument Used—Deadly Weapon—Charge of Court—Presumption.**

Where, upon trial of murder, the court's main charge, in connection with his explanation to the jury of the law of self-defense, included Article 1106, P. C., but made no application of the law as therein stated to the facts of the instant case, *held:* that under the facts there was no error in refusing a requested charge instructing the jury that if deceased was using a knife in his attack on defendant and that said knife was such as would have been calculated to inflict death or serious bodily injury, that then the law presumed that it was the design of the deceased to inflict such injury, etc., as the evidence in the case did not raise such issue.

**6.—Same—Deadly Weapon—Pocket Knife—Charge of Court—Requested Charge.**

A requested charge which sought to have the jury instructed that if deceased used the knife in an attack upon defendant, that the law presumed that he designed to injure, etc., was not correct as a matter of law under the facts in the instant case, the evidence showing that the knife which was found near the deceased was closed at the time of the difficulty and was in such condition that it could not be termed a deadly weapon, and it was therefore no reversible error in not submitting Article 1106, supra, with reference to the instrument used by the deceased.

**7.—Same—Requested Charges—Practice in Trial Court—Instrument Used.**

It is the duty of the trial court to give charges as asked with or without modifications, or to refuse them. Following Jones v. State, 22 Texas Crim. App., 620, and other cases; and where the court refused a requested charge under Article 1106, supra, and the record showed that there was no testimony that the alleged knife used by the deceased was a deadly weapon, or one with which death or serious bodily injury could be inflicted, it was not necessary to charge on said article. Following Goodman v. State, 49 Texas Crim. Rep., 188, and other cases; distinguishing Kendall v. State, 8 Texas Crim. App., 579, and other cases.

**8.—Same—Self-Defense—Charge of Court—Attack, Actual or Apparent.**

Where defendant's right of self-defense against an attack or threatened attack on the part of deceased causing reasonable expectation or fear of death or serious bodily injury was fully submitted in the charge of the court in the instant case, defendant's rights are fully safe-guarded and there was no reversible error.

**9.—Same—Rehearing—Presumption of Attack—Practice on Appeal—Article 743.**

Where appellant again in his motion for rehearing urged that the trial court committed reversible error for failure to submit the presumption of law in Article 1106, P. C., this court, after again reviewing the record, adheres to the decision that the facts in the instant case did not require the court to submit defendant's requested charge on this issue, and in any event this court is forbidden to reverse and remand for errors or omissions in the matter of charges which it does not believe to have been of any possible injury to defendant under Article 743, C. C. P.

Appeal from the District Court of Comanche. Tried below before the Honorable J. H. Arnold.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Calloway & Calloway,* and *A. R. Eidson,* for appellant.—On question of instrument used and presumption of law: Briggs v. State, 6 Texas Crim. App., 144; Jones v. State, 17 id., 612; Duke v. State, 120 S. W. Rep., 894; Fread v. State, 210 id., 695; Mason v. State, 228 id., 952, and cases cited in opinion.

*R. H. Hamilton,* Assistant Attorney General, and *Smith & Woodruff,* for the State.—On question of instrument used, and charge of court: Renow v. State, 120 S. W. Rep., 174; Reagan v. State, 157 id., 483; Best v. State, 135 id., 581; Bankston v. State, 175 id., 1068, and cases cited in opinion.

HAWKINS, JUDGE.—Conviction was for murder. Punishment was assessed at twenty years in the penitentiary. This is the second appeal. The opinion as reported on the former hearing will be found in 87 Texas Crim. Rep., 375. The facts developed on the subsequent trial were substantially the same as appears in the former opinion, and will not be set out here unless in connection with the discussion of some assignment of error it becomes necessary to revert to some portion of the testimony.

In rebuttal the State proved over appellant's objection by a son of deceased that the latter's eyesight was very bad, and he could not see well enough to recognize a person close to him, and that he could not recognize witness when meeting him except by his voice. The bill presenting this alleged error is qualified by the trial judge to the effect, that appellant himself testified that he had known deceased about forty years, and knew his eyesight was impaired. Deceased is shown to have been a man about seventy years old. Appellant and his witnesses testified to an attack upon appellant by deceased of such a character as did not comport with the ordinary conduct of one of his age and defective vision, and we see no error in the admission of this evidence. This question seems to be practically the same one decided adversely to appellant in the sixth subdivision of the former opinion.

Appellant claimed that deceased attacked him with a knife, and cut his clothes, which were exhibited to the jury. It was hotly contested by the State whether deceased ever had his knife opened at all during the difficulty that resulted i his death. It was evidently the theory of the State that appellant cut his own clothes to make it appear that he was defending against an attack with a knife. In rebuttal the State proved by the sheriff that when he arrested appellant he had a knife in his possession which was very sharp; whereas the evidence showed the closed knife found near the body of deceased was very dull, and a generally dilapidated condition. We are of opinion this evidence was pertinent upon the issue as to the cuts upon appellant's clothing. It does not occur to us that appellant's complaint is tenable that the jury may have considered it as evidence indicating that he

was a bad man, or that he could have resorted to the knife instead
of a pistol in repelling the alleged assault by deceased.

Complaint is made because the State was permitted to introduce the
clothing worn by deceased at the time of the homicide. In the former
opinion we find the following language: "The attitude of the parties
toward each other during the difficulty being an issue, we are unable
to say that it was error to admit in testimony the clothing worn by
deceased at the time of the shooting." The trial judge, after set-
ting out the conflicting testimony on the relative positions of the
parties, certifies that the evidence upon this issue was substantially
the same as on the former trial.

The fourth and fifth bills of exceptions may be considered to-
gether. Appellant requested special charges to the effect that appellant
had the right to go to deceased for the purpose of explaining and
proving to him that appellant did not get the binder chain over which
the trouble arose, and the fact that appellant was armed with a pistol
would not affect his right of self-defense. The reason given by the
court for refusing the charges was that nowhere in the charge was
appellant's right of self-defense in any way abridged. An examina-
tion of the record discloses that a full, fair and untrammelled charge
on self-defense, both from attack, and on the ground of communicated
threats was submitted to the jury in the main charge; and this was
supplemented by a special charge on the same subject. There being
no instructions in any way restricting self-defense, there was no ne-
cessity for giving the requested charges. Such has been the holding of
this court in a long line of authorities. (Branch's Anno. P. C., page
1091, Section 1950, and authorities collated.) Willeford v. State, 42
S. W. Rep., 972; Ford v. State, 77 Texas Crim. Rep., 252, 177 S. W.
Rep., 1176; Finch v. State, 71 Texas Crim. Rep., 325; 158 S. W.
Rep., 510; Ray v. State, 80 Texas Crim. Rep., 461, 190 S. W. Rep.,
1111; Smith v. State, 81 Texas Crim. Rep., 368, 195 S. W. Rep., 595;
Hollman v. Smith, 212 S. W. Rep., 662, 85 Texas Crim. Rep., 371.

The assignment which has given us more concern than any other
presented in the record will now be discussed. Appellant requested
a special charge, which the court refused to give, which was a substan-
tial copy of the first part of Article 1106 (676), Penal Code, and then
followed an application of the law of that Article as follows: "Now,
therefore, if you believe from the evidence that the deceased was using
a knife in his attack on the defendant, if you believe he attacked defend-
ant, and that said knife was such as would have been calculated to
inflict death or serious bodily injury, then you are charged that the law
presumes that it was the design of the deceased to inflict such injury.
In case you have ▮▮▮▮▮▮▮▮▮▮▮doubt herein you will give defendant the
benefit of su▮▮▮▮▮

We ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ction with his expla-
nati▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ludes Article
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮in stated

to the facts of this case. No exception was presented to the court's charge pointing out such failure, but the special charge adverted to was requested.

In order to determine whether the requested charge should have been given it is necessary to look to the statement of facts for a description of the knife which it is claimed deceased had, and therefrom ascertain whether an issue was raised requiring the submission thereof to the jury. There were only three eyewitnesses at the immediate scene of the killing, appellant, Nelse Briscoe and one Sewell. Their testimony throws no light upon the character of weapon which it is claimed deceased had at the time he was killed. Sewell disclaims having seen a knife in his hand at any time during the difficulty. Nelse Briscoe claims to have seen deceased take a knife out of his pocket with his left hand and change it to his right hand, but he claims that all the blows struck by deceased at appellant were struck with the left hand. This witness claims never to have seen the knife open at any time. The appellant, however, testified that deceased did get his knife out, opened it, and made an attack upon him with it, in which he claims the sleeve of his jumper was cut and the skin of his arm grazed. The only description of the knife which we find in the record is from the justice of the peace who held the inquest, and from the sheriff. One of these witnesses testified in regard to the knife, substantially, as follows: "This knife was lying on the ground by his side, closed. The back spring is loose, the large blade, I think, is about two and one-half inches long. Seems to be badly used, gapped and very dull. The back spring is worn out and gives away when you press against the knife blade. The small blade is about one and one-half inches or two inches long, probably not so long. It is in better condition than the bid-blage, pointed at the end and not so gapped as the other. It is not sharp, but very dull. The back spring to this blade is in the same condition as the large blade. When you press against the blades they spring back beyond the back spring,—this spring just gives way." The other witness testified substantially that: "The knife was lying on the right side of deceased, about eighteen inches from his pocket when he first noticed it, and that the knife was closed. The larger blade is a pointed blade, tapering kinder to a point, shows to be a little sharp on the end, but not much. The blade is about three and one-half inches long; the handle about four inches; the entire knife from end to end is about six or seven inches. The small blade is about two inches long. This blade is not sharp, but it is sharper than the other one. The blades will come back a certain distance against the back spring, and then do not seem to go back any further. There is a big gap here in the big blade, I judge ful̲l̲ ▇▇▇▇▇th inch broke out. From where it is gapped to the ▇▇▇▇▇▇▇▇▇▇l̲. The point of the blade is not shar▇▇▇▇▇▇▇▇▇▇▇When the blade is press▇▇▇▇▇▇▇▇▇▇▇▇▇back beyond t▇

loose ·in the jaws. The little blade is sharper than the big blade of the knife, and more pointed. I do not call it a sharp blade at all. Both blades of the knife are loose in the jaws, they are very loose. A dull knife can be stuck in a person the same as a sharp one. A man can be stabbed with a dull knife or instrument."

Does the description of the knife raise such an issue of fact as required the court to submit a charge on presumption as to intent from its use? Before such a charge is called for the instrument must be shown to be one, not with which death or other injury defined by the Article in question might, or could be inflicted, but one "calculated to produce that result," or the evidence must be such as raises an issue of fact upon that point for the settlement of the jury. We have examined all the cases cited by appellant in his brief upon this question. In Polk v. State, 60 Texas Crim. Rep., 499, the instrument in question was a loaded quirt. This court held the charge should have been given; the opinion stating: "All the witnesses who testified in regard to the quirt stated that the handle of the quirt was heavily loaded with iron, and could be used easily to inflict death, and that it was in fact a deadly weapon. In Shed v. State, 68 Texas Crim. Rep., 373, 153 S. W. Rep.. 125, no description whatever is given of the knife which seems to have figured in that case, and hence throws no light on the question. In duke v. State, 56 Texas Crim. Rep., 503, it appears from the majority opinion that the evidence was contradictory as to whether deceased was armed at the time he was killed. Judge Davidson in writing the opinion says: "This does not affect the question. When the accused introduced evidence suggesting or raising an issue favorable to his side, the law applicable to that testimony should be given in charge to the jury," and holds that under appellant's testimony the court should have given in charge what was then Article 676, now being Article 1106. In Bankston v. State, 76 Texas Crim. Rep., 504, 175 S. W. Rep., 1068, the issue was not as to the character of the weapon deceased had, but as to whether he had one at all; if he had one it was a gun, and *per se* a deadly weapon. In Ward v. State, 30 Texas Crim. App., 687, the instrument in deceased's hand was a pistol, and a deadly weapon *per se*. In Hudson v. State, 59 Texas Crim. Rep., 650, the instrument in question was a knife with a blade two and one-half inches long, which a physician testified would kill a man. Judge Ramsay, in the opinion in the Hudson case, used the following language. "The knife here charged to have been used, in view of ·the uncontradicted testimony that it was a deadly weapon, brings the case clearly within the rule laid down in Pierce v. State, 21 Texas Crim. App., 540 and Ward v. State, 30 Texas Crim. App., 687." In Best v. State, 61 Texas Crim. Rep., 551, 135 S. W. Rep., 581, the evidence showed that deceased was approaching defendant with an open knife with a blade three inches long, and threatening to kill him. There is no testimony in the case that the knife used was a deadly weapon, other than that the testimony

shows the blade to have been three inches long, but the court held that the issue was raised by that testimony, and that the substance of the article under discussion should have been given.

We are of opinion, after an examination, not only of the authorities cited in appellant's brief, and referred to above, but of many other cases in which the effect of Article 1106 has been discussed, that this Article should be given in charge to the jury whenever the evidence shows that the weapon used by the deceased was *per se* a deadly weapon, or where the evidence raises an issue as to whether such instrument was one calculated to produce death or such other injury as included in such article. This being the conclusion at which we have arrived, we are of opinion the special charge requested by appellant should have been given. There was no application of the law to the facts upon that issue, and the charge was evidently designed to supplement the main charge of the court in this particular. The knife which it is claimed deceased had at the time of his death was introduced before the jury. They had an opportunity to examine it and had the benefit of their own conclusion with reference to its character, in addition to the testimony as shown in the record. It evidently was not in first-class condition, and yet, this court cannot say, as a matter of law, that it was not an instrument which was calculated to produce death. One witness described the larger blade as being two and one-half inches long; another that it was three inches long. The description of the knife having raised an issue as to whether it was an instrument calculated to produce death, that matter should have been decided by the jury, under appropriate instructions, and the special charge requested is pertinently upon that issue, in telling the jury, in substance, that if they found that deceased was attacking appellant with the knife, and that it was an instrument calculated to produce death, or other serious injury, then the law presumed that he intended to kill the appellant.

For the error discussed the judgment of the trial court is reversed, and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

December 7, 1921.

LATTIMORE, Judge.—Upon reconsideration of the record and the authorities we are of opinion that the State's motion for rehearing herein should be granted. Article 1106, Vernon's P. C., was substantially given in the main charge, and we have concluded that under the facts, that portion of special charge No. 6, for failure to give which we reversed this cause, was erroneous and misleading. Said paragraph of said special charge is as follows:

"Now, therefore, if you believe from the evidence that the deceased was using a knife in his attack on defendant, if you believe he attacked defendant and that said knife was such as would have been calculated to inflict death or serious bodily injury, then you are charged that the law presumes that it was the design of deceased to inflict such injury. In case you have a reasonable doubt hereof, you will give defendant the benefit of such doubt."

This sought to have the jury told that if deceased *used a knife* in an attack that the law presumed that he designed to injure. This statement was not correct as a matter of law, and especially so under the facts in the instant case. From the testimony of appellant's own eyewitnesses, as wll as those for the State, it appears certain that deceased had a knife in his hand, but Nelson Briscoe and Sewell, who went to the scene of the homicide with appellant and testified for him, and showed to have been immediately present, swore that while deceased had and used a knife in whatever attack he may have made upon appellant, same was at no time open but was held closed in one or the other of the hands of deceased during the entire attack. Nelson Briscoe testified that deceased had his knife in his right hand closed while attacking appellant, and that when deceased fell dead he saw the closed knife lying by his hands. Sewell swore that during the attack by deceased, he was striking appellant alternatively with both hands, and that he saw nothing of the knife, but when deceased fell dead he saw the closed knife lying by deceased's right hand. It is manifest that a closed knife held in the hand while making an attack with the fists, would not be a deadly weapon, and Article 1106, *supra,* should not be charged in such case. The above facts being true, a charge seeking to have the jury told that if deceased *used a knife* in attacking appellant it would be presumed that he intended to kill him, was properly refused.

It is the duty of the court to give charges as asked, with or without modification, or to refuse them. Jones v. State, 22 Texas Crim. App., 680; Sparks v. State, 23 Texas Crim. App., 447.

We further observe that no witness testified that said knife was a deadly weapon, or one with which death or serious bodily injury could be inflicted. Appellant said deceased struck him with it and cut his sleeve, but no wound was inflicted on his person. The knife was old and dull and the jaws were loose so that pressure on either blade would make it bend beyond the back spring. We have often held that when proof fails to show the deadly character of the weapon held by deceased, it was not necessary to charge Article 1106, *supra.* Goodman v. State, 49 Texas Crim. Rep., 188; Renow v. State, 56 Texas Crim. Rep., 343; Spencer v. State, 59 Texas Crim. Rep., 222; Ragan v. State, 70 Texas Crim. Rep., 498, 157 S. W. Rep., 483. We do not believe any case can be found where it is held necessary to have charged Article 1106, *supra,* where the evidence failed to show the deadly character of the instrument or weapon in the hands of deceased. We have

reviewed all the authorities again, which are cited by appellant in his brief, as well as many others, and have concluded that the facts in each of them showed so conclusively the deadly character of the weapon in the hands of deceased, as to clearly differentiate those cases from the one now under consideration.

In Kendall v. State, 8 Texas Crim. App., 579, this court used the following language: "The law makes different provisions for the exercise of the right of self-defense or the protection of another, according to the gravity, actual or apparent, of the attack; and the character of the attack must usually be determined by the judge in the first instance, before he delivers his charge to the jury. If the attack of the person slain was manifestly with intent to murder or maim,—that is, made with weapons or other means calculated to produce either of those results,—then there is no occasion to instruct a jury as to the law which obtains in case the attack was of a milder character, because such law is not applicable to the case, and can subserve no purpose other than to confuse the jury. On the other hand, if the attack clearly comes within the meaning of 'any other unlawful and violent attack' than with intent to murder, or maim, or seriously injure, then the law governing the graver attacks should be altogether discarded as inapplicable. It can seldom happen in any case that such a determination by the judge can be attended with serious embarrassment, because it is only required to contemplate the weapons or means used by the appellant in the first instance, and if they are such as would have been calculated to produce death, or mayhem, then the law fixes the character of the assault."

In considering this motion we have had occasion to examine many authorities cited under Article 1147, Vernon's P. C., which is close of kin to Article 1106, supra. Said Article 1147 provides that if the instrument used by the accused be one not likely to produce death, it is not to be presumed that death was designed, etc.; and we have also carefully considered other kindred statutes, among them that of an aggravated assault, which becomes aggravated when the assault is committed with a deadly weapon. We have been unable to find a case wherein this court has upheld a conviction for an aggravated assault when the ground of aggravation is the deadly character of the weapon used, where the evidence did not show with greater certainty than in the instant case, the deadly character of such weapon. Martinez v. State, 33 S. W. Rep., 970; Wilson v. State, 34 Texas Crim. Rep., 64; Branch v. State, 35 Texas Crim. Rep., 304; Burleson v. State, 73 Texas Crim. Rep., 200, 164 S. W. Rep., 851.

Appellant's right of self-defense against an attack or threatened attack on the part of deceased causing reasonable expectation or fear of death or serious bodily injury, was fully submitted in the charge of the court in the instant case, and we think amply safeguarded his rights.

Believing that we were in error in our judgment of reversal, the motion of the State for rehearing is granted, and the judgment of the trial court herein is affirmed.

*Affirmed.*

(CONCURRING.)

December 7, 1921.

HAWKINS, JUDGE.—In my opinion, the legal questions arising from the record and reviewed in the original opinion are correctly stated.

Upon a review of the evidence my brother Lattimore reached the onclusion that the same does not sufficiently raise the issue as to the deadly character of the knife in the manner used by deceased to have required the court to submit the special charge, the refusal of which was made the basis of the reversal. The evidence is slight and un-·atisfactory upon the point in question, and I am not so certain as to the correctness of my own conclusions as to warrant a disagreement with him. His view, as I understand his opinion on rehearing, is that practically all the evidence, aside from appellant's own, is to the effect that at the time of the homicide the knife deceased had in his hand was not open, and that appellant's testimony to the contrary, together with the description of the knife as subsequently detailed, is not sufficient to show that deceased was using a deadly weapon. It is upon this understanding of the opinion on the motion for rehearing that I agree in the conclusion reached, and not upon the view that there is any inaccuracy in the legal propositions stated in the original opinion.

MORROW, PRESIDING JUDGE.—I concur in the result upon the grounds stated above.

ON REHEARING.

February 1, 1922.

LATTIMORE, JUDGE.—Without disagreement as to the correctness of any principle of law in its original opinion, but because of a conclusion that the facts in evidence did not demand the submission of the presumption of law referred to in Article 1106, Vernon's P. C., this court granted the State's motion for rehearing and affirmed this case. We have had our attention called by appellant's motion for rehearing to what he contends are our erroneous conclusions regarding the facts, but a review of same fails to lead us to believe that our said conclusion of facts was erroneous. Being still of the opinion that every legal right due him under the law applicable to the facts, was

given this appellant upon his trial by the court below; and being in any event forbidden to reverse cases for errors or omissions in the matter of charges which we do not believe to have been of any possible injury to him (Art. 743, Vernon's C. C. P.), we must overrule appellant's motion for rehearing.

· *Overruled.*