E. C. PAPE v. THE STATE.

No. 4077.    Decided November 11, 1908.

**1.—Murder—Jury and Jury Law—Constitutional Law.**

The Act of the Thirtieth Legislature which provides that counties containing a city or cities having twenty thousand inhabitants or more should draw grand and petit jurors differently from the manner of drawing them in counties not similarly situated, etc., is constitutional. Following Smith v. State, 54 Texas Crim. Rep., 298, Davidson, Presiding Judge, dissenting.

**2.—Same—Newly Discovered Evidence—Uncommunicated Threats.**

Upon trial for murder where the State's testimony placed defendant in the wrong and the testimony of defendant made it a case of self-defense, and the evidence sharply presented the issue as to how the difficulty originated; and the newly discovered evidence showed uncommunicated threats by the deceased against the defendant, of which defendant or his counsel could not have had notice by reasonable diligence; and also that the main State's witness was impeached by her statement made out of court, etc., the motion for new trial should have been granted. Following Tankersley v. State, 31 Texas Crim. Rep., 595, and other cases.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. W. W. Nelms.

Appeal from a conviction of manslaughter; penalty, five years' imprisonment in the penitentiary.

The opinion states the case.

*Thomas & Sewell* and *Crawford & Crawford,* for appellant.—On question of newly discovered evidence, Taylor v. State, 39 S. W. Rep., 372; Estrada v. State, 29 Texas Crim. App., 169; Price v. State, 43 S. W. Rep., 96; Bird v. State, 16 Texas Crim. App., 528.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant filed a motion to quash the special venire, alleging that the law under which it was drawn was unconstitutional. The law referred to is the Act of the Thirtieth Legislature, which provides that those counties containing a city or cities having twenty thousand inhabitants or more should draw grand and petit jurors differently from the manner of drawing them in other counties not similarly situated, to be determined by the census of 1900. This contention was held to be not well taken in the opinion of the majority of the court in the Bob Smith case decided at our recent Austin term and in which a motion for rehearing was overruled at the present term. The writer dissented in that case and is of the opinion still that this point is well taken, but under the opinion of the majority of the court in the Bob Smith case, the question must be decided adversely to appellant.

One of the grounds of the motion for a new trial is newly discovered testimony. Without going into a detailed statement of the

evidence, the issue was sharply drawn on the trial as to who brought about or began the difficulty which ended in the death of the deceased. The witness Nettie Young fairly puts appellant in the wrong. The testimony of Hill and appellant makes it a case of self-defense on the part of appellant. We make this brief statement without going into the details of the testimony because the evidence does present the issue sharply as to how the difficulty originated,—that is, whether appellant was to blame for it or the deceased, Lonnie Hall. The court charged murder in the first and second degree and manslaughter and self-defense. The jury convicted of manslaughter, allotting five years as a punishment. Among other affidavits setting up the newly discovered evidence is that of Sam Young, who states that he was acquainted with the deceased in his lifetime and also knew appellant prior to the date of the homicide. The killing occurred on the 25 of April. On the previous twenty-third day of the same month, this witness swears, he overheard a conversation between the deceased and a person unknown to the affiant; that this happened on the corner of Main and Ervay Street in the City of Dallas, Texas, and while Hall was talking he exhibited a knife, stating at the time, "there are two here against me and by God, I will get one or the other of them before Saturday night." That the deceased further stated, in answer to a question addressed to him by his companion, that these two parties were Sam Young and E. C. Pate, appellant. Proper affidavits are also in the record showing that Sam Young did not communicate these statements and threats to the accused, and that so far as he was concerned, neither appellant nor his counsel knew of these facts and proper affidavits are presented in the record by the accused and his counsel that they knew nothing of these facts until after the conviction. There are affidavits of newly discovered testimony in the record from Mrs. Susan Tally, which is brought squarely within the rule of newly discovered evidence as far as diligence is concerned and want of knowledge on the part of appellant and his counsel. There may be some objection, perhaps, to the testimony of Mrs. Tally upon the ground that it would be impeaching in its nature. It is in respect to statements made by Nettie Young, the principal State's witness, to Mrs. Tally a day or two after the killing. However, under the view we take of the case it will be unnecessary to discuss this phase of the case and the presence of Mrs. Tally can be secured upon another trial. We are of opinion that the motion for a new trial should have been granted upon the newly discovered testimony of Sam Young. These threats were uncommunicated. If they had been communicated prior to the homicide, of course, it would not be newly discovered evidence, but it is shown by the affidavits to be newly discovered clearly and unequivocally. The rule is well settled that threats made by an injured party accompanied by an act showing intent to execute them will justify all necessary resistance by the party threatened. "Where the issue

is of self-defense, and the testimony leaves it doubtful as to who began the difficulty, threats of the alleged injured party, made against the accused, is legitimate evidence, and may become of a most material character in assisting the jury to arrive at a correct conclusion as to who in fact did begin the difficulty, 'because the fact that such threats had been made would tend to show an attempt to execute them probable if the opportunity was offered,' 'and the more ready belief of the accused would be justified to the precise extent of this probability.'" Tankersley v. State, 31 Texas Crim. Rep., 595; Stokes v. The People, 53 N. Y., 492; Keener v. The State, 18 Ga., 194; Pritchett v. The State, 22 Ala., 39; Campbell v. The State, 16 Ill., 17; Cornelius v. The Commonwealth, 15 B. Mon., 539. It is also stated as a general proposition, with but few exceptions, in every case of homicide, threats, communicated or uncommunicated, are admissible in evidence, though, in certain character of cases, where their exclusion could not possibly injure the rights of the defendant, it would not be error for the court to reject them. Stewart v. State, 36 Texas Crim. Rep., 130. The same case lays down the proposition that in a case of homicide, whenever the evidence leaves it doubtful as to who began the difficulty, or made the first hostile demonstration, evidence of uncommunicated threats, made by the deceased, is relevant as evidence tending to show which of the parties most likely began the difficulty. It was also further held in the same case that on a trial for homicide where the testimony of the eyewitnesses was conflicting as to which of the parties, deceased or defendant, made the first hostile demonstration, it would be error to exclude evidence of uncommunicated threats made by the deceased. This rule seems to be practically universal. At least it is supported by an unbroken array of authorities in Texas. In addition to the authorities already cited, see Reeves v. State, 34 Texas Crim. Rep., 483; Pitts v. State, 29 Texas Crim. App., 374; Stapp v. State, 1 Texas Crim. App., 734. In his notes Judge White in his Annotated Penal Code thus states the rule: "When the evidence leaves it in doubt as to who began the difficulty, threats, whether communicated or not, may become evidence of the most material character because the fact that they had been made would tend to show an intent to execute them probable, if opportunity offered." Meeting another emergency or contention that might arise upon the trial, where there are two theories, the rule is again thus stated: "Where the case presented two theories, one of unprovoked murder—the other self-defense—a second application for continuance to prove communicated threats made by the deceased should have been granted on the motion for new trial, though the evidence sought by the continuance was somewhat cumulative." Gilcrease v. State, 33 Texas Crim. Rep., 619. So from the rules enunciated under the decisions, we are of opinion that the court should have granted a new trial on account of the newly discovered evidence. The reasons in the case suggested by the testimony are cogent why this should

have occurred. The State's witness Nettie Young makes it apparent that the deceased was her lover; that she had separated from more than one husband while she was yet under twenty years of age; that the last one from whom she had separated was Sam Young; that the deceased was her lover to whom she would be married as soon as a divorce could be obtained from Sam Young; that the deceased had bought the dirk knife mentioned by her and other witnesses shortly before the homicide and some of the facts go to show, in our judgment, that some of the animosity of the deceased was directed pointedly at the appellant. They were boarding at the same house, appellant taking his meals there and sleeping at another place; the deceased taking his meals and sleeping in the house where the homicide occurred. The contention in the difficulty was in regard to the woman Nettie Young. Nettie Young makes a case that would have justified the jury in finding that appellant was in the wrong. While the testimony of Hill and appellant makes it clear that the deceased was in the wrong, and that he had drawn a dirk and was approaching appellant with the view of killing him at the time appellant fired the fatal shot, there being but one shot fired. Nettie Young testifies that appellant's knife was in her trunk at the time of the difficulty. Appellant testified that the deceased was approaching him with the knife at the time he shot. The witness Hill testified in substance that the deceased provoked the difficulty, or was in the wrong in bringing it on, and that when the shot was fired he heard something drop on the floor. The newly discovered testimony of Mrs. Tally is to the effect that Nettie Young told her in substance, as soon as appellant shot deceased, she picked up the knife. So under all the circumstances, under our authorities, we are of opinion that the newly discovered evidence of Sam Young was very material and was sufficient to require the award of the motion for a new trial.

There is another question presented for reversal that will not require discussion, that is, in regard to the misconduct of the jury in discussing the frequency of homicide cases in Dallas County, as well as reference to the Brown homicide case and what ought to or would be done with him. This will not arise upon another trial as it occurred in this case and, therefore, a discussion of that question is pretermitted.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*