PORTER BANKSTON v. THE STATE.

No. 3521.   Decided April 21, 1915.

### 1.—Murder—Evidence—Rebuttal—Viewpoint of Witnesses.

Where, upon trial of murder, defendant contended that the State's witnesses could not see the difficulty to which they had testified, there was no error in admitting testimony that from the point where the State's witnesses placed themselves, they were in plain view of the difficulty.

### 2.—Same—Sufficiency of the Evidence.

Where, upon trial of murder, the State's testimony amply supported the verdict, there was no reversible error on that ground.

### 3.—Same—Evidence—Uncommunicated Threats.

Upon trial of murder, it was reversible error to exclude testimony that the deceased, shortly before the homicide, had made a threat against the defendant which had not been communicated to the latter, it being an issue in the case as to who began the difficulty.

### 4.—Same—Rule Stated—Uncommunicated Threats.

The rule in this State is that uncommunicated threats made by the deceased against the defendant are admissible in evidence, where it is an issue

who began the difficulty or who was most likely to have done so. Following Pape v. State, 54 Texas Crim. Rep., 463, and other cases.

### 5.—Same—Case Stated—Who Began the Difficulty.

Where the State's case was that defendant began to shoot at once at deceased and the latter fleeing, the defendant pursued and killed him, and the defense was that the deceased, as soon as he got to the defendant, began to shoot at him; that deceased fled and went into a house to get his gun and then shot at the defendant, until defendant shot and killed him, any and all testimony which would probably throw light on the question as to who began the difficulty should have been admitted.

### 6.—Same—Threats—Charge of Court—Self-defense—Actual and Apparent Danger.

Where, upon trial of murder, the testimony of the defendant and all his witnesses showed actual danger, if any danger, and the evidence did not raise the issue of apparent danger viewed in the light of previous threats, there was no error in the court's failure to submit the issue of self-defense from the standpoint of apparent danger based on prior threats. Following Barnes v. State, 39 Texas Crim. Rep., 184, and other cases.

### 7.—Same—Presumption—Deadly Weapon—Charge of Court—Intent.

Where the defendant objected to the charge of the court because it failed to instruct the jury under article 1106, Penal Code, where the evidence showed an actual attack by the deceased, as to the presumption of intent to kill which arose from the weapon used by the deceased when he made the attack, the same was reversible error. Following Smith v. State, 57 Texas Crim. Rep., 455, and other cases.

Appeal from the District Court of Wharton. Tried below before the Hon. J. W. Conger, Special Judge.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. C. McDonald,* Assistant Attorney General, for the Státe.—On question of uncommunicated threats: Sebastian v. State, 42 Texas Crim. Rep., 84, and cases cited in the opinion.

HARPER, JUDGE.—Appellant was convicted of murder and his punishment assessed at twenty years confinement in the State penitentiary.

The theories of the State and appellant directly conflict. The State's case, as made by its witnesses, is that deceased, Tom Roberts, went to the home of appellant to see him on some business; that deceased was unarmed, and after an altercation appellant shot at deceased; that deceased turned and fled, when appellant pursued him, continuing to shoot, finally killing him in the public road. A pistol was found by the body of the deceased, but the State's theory of the case is that appellant placed it there, further contending that appellant had gone to the home of deceased, secured his Winchester rifle, and, knowing that deceased was unarmed, took the occasion he did to kill him. The State's testimony amply supports the verdict, and we will take occasion

here to say that as the State's witnesses were some distance from the shooting, and appellant's contention was that they could not see the difficulty, there was no error in admitting testimony that from the point where the State's witnesses placed themselves, they were in plain view of the point where the difficulty occurred.

However, appellant contends that deceased came to his home that evening, and as soon as he got there opened fire on him with a pistol; that he fled and deceased pursued him, continuing to shoot; that he ran around the barn, jumped a fence, fled into the house, got a Winchester rifle (which he says was his own) and returned to the door, and as he got to the door deceased again shot at him, when he also fired, killing deceased.

With the issues thus drawn as to who began the difficulty, appellant called G. H. Chandler as a witness, whom he says would have testified: "I was talking to Tom and telling him I heard he was not going to get off of the place that he had sold me. I had paid for this place and had given him permission to stay on there a few days provided it was agreeable to him and Porter, and his mamma was to send him money to go to Oklahoma. I had paid the money then, and had charge of the deeds, and had heard that he said he was not going to leave, and nobody could get him off there, and that it was his place and he was not going to sell it, and he said it was not so, and asked who it was said that, and I would not tell it as I did not want to, and he said there was nobody keeping up this hurrah except Porter Bankston, and he said, 'I will fix him,' and I never did tell him who told me. After that I saw Porter Bankston before the killing, and told him he had better go fix the fence before the cows would get in and eat up the crop, and to carry someone with him because Tom was mad. I did not tell him Tom had made any threats because I did not want to create any hard feelings between him and Tom." The bill of exceptions is approved without qualification, and we cannot understand why this testimony was excluded. As said by Mr. Branch in his work on Criminal Law, section 481, the rule in this State is that uncommunicated threats made by deceased against defendant are admissible where it is an issue who began the difficulty, or who was most likely to have done so. See also Pape v. State, 54 Texas Crim. Rep., 463; Pitts v. State, 29 Texas Crim. App., 374; Stewart v. State, 36 Texas Crim. Rep., 130; Trotter v. State, 37 Texas Crim. Rep., 468; Huddleston v. State, 54 Texas Crim. Rep., 93. While Mr. Chandler says that he did not tell appellant about deceased saying, "I will fix him," yet he says he did tell appellant that deceased was angry and to carry someone with him when he went to fix the fence on the place deceased was staying. The record shows that the killing took place at the home of appellant; that ill-will existed between deceased and appellant; that it grew out of possession of a tract of land. It appears that Mr. Chandler had purchased a tract of land on which deceased was living from the father and mother of deceased, and had placed appellant in control of it. On the day of the homicide, with appellant's knowledge and consent, his brother, Lawrence Bankston, had

moved into the house theretofore occupied by deceased, without the knowledge or consent of deceased. When deceased returned home in the evening he found this out and at once went to the home of appellant, and the fatal encounter took place. Now the issue to be tried by the jury is whether or not, as soon as deceased got there he opened fire on appellant, or if appellant, without just provocation, knowing that he had placed his brother, Lawrence, in the house occupied by deceased, began hostilities as soon as deceased arrived on the ground to inquire about the matter. The State's case is that appellant did begin to shoot at once, and deceased fleeing, he pursued and killed him. The appellant's defense is, that deceased as soon as he got there began to shoot at him and he fled, finally getting in the house, where he got his gun, and that he shot in defense of himself, deceased never ceasing to shoot at him until he, deceased, fell. Any and all testimony which would probably throw light on which one began the difficulty should have been admitted.

One of the witnesses testifies to a positive threat made by deceased, and that he, before the difficulty, communicated the threat to the appellant. Appellant, at the time the charge was submitted to him for inspection, objected to it on the ground that the charge only submitted the issue of self-defense from actual danger, and did not instruct the law of self-defense in a case where the threats of deceased to do him bodily harm had been communicated to him prior to the difficulty. As the evidence of appellant and all his witnesses show actual danger, if any danger, and the evidence does not raise the issue of apparent danger, viewed in the light of previous threats, the court committed no error. Barnes v. State, 39 Texas Crim. Rep., 184; Chalke v. State, 35 Texas Crim. Rep., 116.

The only other question presented by the record we think it necessary to discuss is, appellant objected to the charge of the court because it failed to instruct the jury the provisions of article 1106, Penal Code. The rule seems to be that it is error for the court to fail to charge the presumption from the weapon used by deceased when he actually attacks the defendant, or the defendant's testimony would show an actual attack. (Clark v. State, 56 Texas Crim. Rep., 293; Scott v. State, 46 Texas Crim. Rep., 305; Smith v. State, 57 Texas Crim. Rep., 455.) In the latter case the defendant testified that deceased was shooting at him, and it was held to be error to fail to charge that the law presumed in such case that the deceased intended to kill, if he did shoot at defendant.

The other bills present no error, but on account of the errors above recited the judgment is reversed and the cause remanded.

*Reversed and remanded.*