Conviction was for murder. Punishment was assessed at twenty years in the penitentiary. This is the second appeal. The opinion as reported on the former hearing will be found in 87 Tex. Crim. 375. The facts developed on the subsequent trial were substantially the same as appears in the former opinion, and will not be set out here unless in connection with the discussion of some assignment of error it becomes necessary to revert to some portion of the testimony.
In rebuttal the State proved over appellant's objection by a son of deceased that the latter's eyesight was very bad, and he could not see well enough to recognize a person close to him, and that he could not recognize witness when meeting him except by his voice. The bill presenting this alleged error is qualified by the trial judge to the effect, that appellant himself testified that he had known deceased about forty years, and knew his eyesight was impaired. Deceased is shown to have been a man about seventy years old. Appellant and his witnesses testified to an attack upon appellant by deceased of such a character as did not comport with the ordinary conduct of one of his age and defective vision, and we see no error in the admission of this evidence. This question seems to be practically the same one decided adversely to appellant in the sixth subdivision of the former opinion.
Appellant claimed that deceased attacked him with a knife, and cut his clothes, which were exhibited to the jury. It was hotly contested by the State whether deceased ever had his knife opened at all during the difficulty that resulted in his death. It was evidently the theory of the State that appellant cut his own clothes to make it appear that he was defending against an attack with a knife. In rebuttal the State proved by the sheriff that when he arrested appellant he had a knife in his possession which was very sharp; whereas the evidence showed the closed knife found near the body of deceased was very dull, and a generally dilapidated condition. We are of opinion this evidence was pertinent upon the issue as to the cuts upon appellant's clothing. It does not occur to us that appellant's complaint is tenable that the jury may have considered it as evidence indicating that he *Page 653 
was a bad man, or that he could have resorted to the knife instead of a pistol in repelling the alleged assault by deceased.
Complaint is made because the State was permitted to introduce the clothing worn by deceased at the time of the homicide. In the former opinion we find the following language: "The attitude of the parties toward each other during the difficulty being an issue, we are unable to say that it was error to admit in testimony the clothing worn by deceased at the time of the shooting." The trial judge, after setting out the conflicting testimony on the relative positions of the parties, certifies that the evidence upon this issue was substantially the same as on the former trial.
The fourth and fifth bills of exceptions may be considered together. Appellant requested special charges to the effect that appellant had the right to go to deceased for the purpose of explaining and proving to him that appellant did not get the binder chain over which the trouble arose, and the fact that appellant was armed with a pistol would not affect his right of self-defense. The reason given by the court for refusing the charges was that nowhere in the charge was appellant's right of self-defense in any way abridged. An examination of the record discloses that a full, fair and untrammelled charge on self-defense, both from attack, and on the ground of communicated threats was submitted to the jury in the main charge; and this was supplemented by a special charge on the same subject. There being no instructions in any way restricting self-defense, there was no necessity for giving the requested charges. Such has been the holding of this court in a long line of authorities. (Branch's Anno. P.C., page 1091, Section 1950, and authorities collated.) Willeford v. State, 42 S.W. Rep., 972; Ford v. State, 77 Tex.Crim. Rep., 177 S.W. Rep., 1176; Finch v. State,71 Tex. Crim. 325; 158 S.W. Rep., 510; Ray v. State,80 Tex. Crim. 461, 190 S.W. Rep., 1111; Smith v. State,81 Tex. Crim. 368, 195 S.W. Rep., 595; Hollman v. Smith, 212 S.W. Rep., 662, 85 Tex.Crim. Rep..
The assignment which has given us more concern than any other presented in the record will now be discussed. Appellant requested a special charge, which the court refused to give, which was a substantial copy of the first part of Article 1106 (676), Penal Code, and then followed an application of the law of that Article as follows: "Now, therefore, if you believe from the evideice that the deceased was using a knife in his attack on the defendant, if you believe he attacked defendant, and that said knife was such as would have been calculated to inflict death or serious bodily injury, then you are charged that the law presumes that it was the design of the deceased to inflict such injury. In case you have a reasonable doubt herein you will give defendant the benefit of such doubt."
We find in the court's main charge, in connection with his explanation to the jury of the law of self-defense that, it includes Article 1106 (676) P.C., but makes no application of the law as therein stated *Page 654 
to the facts of this case. No exception was presented to the court's charge pointing out such failure, but the special charge adverted to was requested.
In order to determine whether the requested charge should have been given it is necessary to look to the statement of facts for a description of the knife which it is claimed deceased had, and therefrom ascertain whether an issue was raised requiring the submission thereof to the jury. There were only three eyewitnesses at the immediate scene of the killing, appellant, Nelse Briscoe and one Sewell. Their testimony throws no light upon the character of weapon which it is claimed deceased had at the time he was killed. Sewell disclaims having seen a knife in his hand at any time during the difficulty. Nelse Briscoe claims to have seen deceased take a knife out of his pocket with his left hand and change it to his right hand, but he claims that all the blows struck by deceased at appellant were struck with the left hand. This witness claims never to have seen the knife open at any time. The appellant, however, testified that deceased did get his knife out, opened it, and made an attack upon him with it, in which he claims the sleeve of his jumper was cut and the skin of his arm grazed. The only description of the knife which we find in the record is from the justice of the peace who held the inquest, and from the sheriff. One of these witnesses testified in regard to the knife, substantially, as follows: "This knife was lying on the ground by his side, closed. The back spring is loose, the large blade, I think, is about two and one-half inches long. Seems to be badly used, gapped and very dull. The back spring is worn out and gives away when you press against the knife blade. The small blade is about one and one-half inches or two inches long, probably not so long. It is in better condition than the bid blage, pointed at the end and not so gapped as the other. It is not sharp, but very dull. The back spring to this blade is in the same condition as the large blade. When you press against the blades they spring back beyond the back spring, — this spring just gives way." The other witness testified substantially that: "The knife was lying on the right side of deceased, about eighteen inches from his pocket when he first noticed it, and that the knife was closed. The larger blade is a pointed blade, tapering kinder to a point, shows to be a little sharp on the end, but not much. The blade is about three and one-half inches long; the handle about four inches; the entire knife from end to end is about six or seven inches. The small blade is about two inches long. This blade is not sharp, but it is sharper than the other one. The blades will come back a certain distance against the back spring, and then do not seem to go back any further. There is a big gap here in the big blade, I judge fully one-fourth inch broke out. From where it is gapped to the end of the blade is very dull. The point of the blade is not sharp. I would call it a "dubbed" blade. When the blade is pressed against an object it would push part of the way back beyond the back spring. In that condition the blade would naturally be *Page 655 
loose in the jaws. The little blade is sharper than the big blade of the knife, and more pointed. I do not call it a sharp blade at all. Both blades of the knife are loose in the jaws, they are very loose. A dull knife can he stuck in a person the same as a sharp one. A man can be stabbed with a dull knife or instrument."
Does the description of the knife raise such an issue of fact as required the court to submit a charge on presumption as to intent from its use? Before such a charge is called for the instrument must be shown to be one, not with which death or other injury defined by the Article in question might, or could be inflicted, but one "calculated to produce that result," or the evidence must be such as raises an issue of fact upon that point for the settlement of the jury. We have examined all the cases cited by appellant in his brief upon this question. In Polk v. State, 60 Tex.Crim. Rep., the instrument in question was a loaded quirt. This court held the charge should have been given; the opinion stating: "All the witnesses who testified in regard to the quirt stated that the handle of the quirt was heavily loaded with iron, and could be used easily to inflict death, and that it was in fact a deadly weapon. In Shed v. State, 68 Tex.Crim. Rep., 153 S.W. Rep.. 125, no description whatever is given of the knife which seems to have figured in that case, and hence throws no light on the question. In duke v. State, 56 Tex.Crim. Rep., it appears from the majority opinion that the evidence was contradictory as to whether deceased was armed at the time he was killed. Judge Davidson in writing the opinion says: "This does not affect the question. When the accused introduced evidence suggesting or raising an issue favorable to his side, the law applicable to that testimony should be given in charge to the jury," and holds that under appellant's testimony the court should have given in charge what was then Article 676, now being Article 1106. In Bankston v. State, 76 Tex.Crim. Rep., 175 S.W. Rep., 1068, the issue was not as to the character of the weapon deceased had, but as to whether he had one at all; if he had one it was a gun, and per se
a deadly weapon. In Ward v. State, 30 Texas Crim. App., 687, the instrument in deceased's hand was a pistol, and a deadly weaponper se. In Hudson v. State, 59 Tex.Crim. Rep., the instrument in question was a knife with a blade two and one-half inches long, which a physician testified would kill a man. Judge Ramsay, in the opinion in the Hudson case, used the following language. "The knife here charged to have been used, in view of the uncontradicted testimony that it was a deadly weapon, brings the case clearly within the rule laid down in Pierce v. State, 21 Texas Crim. App., 540 and Ward v. State, 30 Texas Crim. App., 687." In Best v. State, 61 Tex.Crim. Rep., 135 S.W. Rep., 581, the evidence showed that deceased was approaching defendant with an open knife with a blade three inches long, and threatening to kill him. There is no testimony in the case that the knife used was a deadly weapon, other than that the testimony *Page 656 
shows the blade to have been three inches long, but the court held that the issue was raised by that testimony, and that the substance of the article under discussion should have been given.
We are of opinion, after an examination, not only of the authorities cited in appellant's brief, and referred to above, but of many other cases in which the effect of Article 1106 has been discussed, that this Article should be given in charge to the jury whenever the evidence shows that the weapon used by the deceased was per se a deadly weapon, or where the evidence raises an issue as to whether such instrument was one calculated to produce death or such other injury as included in such article. This being the conclusion at which we have arrived, we are of opinion the special charge requested by appellant should have been given. There was no application of the law to the facts upon that issue, and the charge was evidently designed to supplement the main charge of the court in this particular. The knife which it is claimed deceased had at the time of his death was introduced before the jury. They had an opportunity to examine it and had the benefit of their own conclusion with reference to its character, in addition to the testimony as shown in the record. It evidently was not in first-class condition, and yet, this court cannot say, as a matter of law, that it was not an instrument which was calculated to produce death. One witness described the larger blade as being two and one-half inches long; another that it was three inches long. The description of the knife having raised an issue as to whether it was an instrument calculated to produce death, that matter should have been decided by the jury, under appropriate instructions, and the special charge requested is pertinently upon that issue, in telling the jury, in substance, that if they found that deceased was attacking appellant with the knife, and that it was an instrument calculated to produce death, or other serious injury, then the law presumed that he intended to kill the appellant.
For the error discussed the judgment of the trial court is reversed, and the cause remanded.
Reversed and remanded.
 ON REHEARING. December 7, 1921.