POLK CRENSHAW V. THE STATE.

No. 23877. Delivered January 14, 1948.
State's Motion for Rehearing Overruled March 3, 1948.

*Dodson & Reagan,* of Marlin, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of 30 years.

The record reflects that appellant's wife was a sister to J. A. Dean, commonly called Blackie Dean, who owned a farm of 110 acres of land, some of which was in cultivation, the balance in pasture. It seems from the record that appellant was rather richly endowed with inertia. Dean, no doubt, realized that appellant would never acquire a home by his own efforts and decided to assist appellant in providing some kind of a home for his sister, appellant's wife. With that object in view, he assisted appellant in the construction of a small log cabin on the 110-acre tract of land and, according to the testimony of appellant and his wife, told them that they might live therein and utilize a few acres of the land as long as he lived. Sometime thereafter Dean's wife died and he, Dean, left the community; went to California where he married and made his home. A. B. Hammond, the deceased, who was a son-in-law of Dean, began negotiations with Dean and his children to purchase the land in question, and did so. Hammond then moved into the house formerly occupied by Dean as his home. Hammond, according to the testimony of appellant and his wife, told them that they could remain on the premises as long as they desired to do so, or something to that effect. However, in the course of a few months some difference arose between appellant and deceased which created ill feeling. The deceased then ordered appellant to move, but appellant made no effort to do so. The deceased on one or two subsequent occasions inquired of appellant when he was going to move to which he replied that he did not know; that the deceased at that time threatened to kill him; that on the day of the unfortunate occurrence, the deceased came up to appellant's home while appellant was sitting on a bench in

his yard and again inquired of him when he was going to move, to which appellant replied that he did not know, whereupon, the deceased cursed him, called him an old s-- of a b----, and also cursed and abused appellant's wife, and told her not to come out of the door, at the same time reaching for his hip pocket, wherupon, appellant shot the deceased five times in rapid succession. He died immediately from the effects of the wounds inflicted.

Appellant brings forward three complaints upon which he relies for a reversal of the judgment of conviction. His first complaint relates to the court's action in declining to grant his motion for a new trial based on the ground of newly discovered evidence, in this, that since the trial he learned from one Joe Eakin that about two weeks prior to the time of the killing the deceased told Eakin that he had bought the Dean place but had not gotten full possession of it and he might have to kill a s-- of a b---- in order to get possession; that appellant nor either of his attorneys had any knowledge thereof and could not have discovered the same by the exercise of reasonable diligence since Eakin did not disclose it to anyone as he did not wish to become involved in any trouble that may arise between the appellant and deceased, but that after the conviction, he decided that he should do so and made an affidavit in substance and effect as set forth in the motion which affidavit is attached thereto. Appellant contends that the newly discovered evidence was not only admissible but was pertinent and material to his defense since it would have aided the jury in deciding who, in fact, began the difficulty. It was the State's theory that appellant, without any cause or provocation and with malice aforethought, shot the deceased. It was appellant's theory that the deceased had threatened to kill him; that he came to appellant's home on the day in question, cursed him, made hostile demonstrations by throwing his hand to his hip pocket as if to draw a pistol, whereupon, he shot him. In the case of Pape v. State, 54 Tex. Cr. R. 462, Judge Davidson, in discussing a question similar to the one here under consideration said, "Where the case presented two theories—one of unprovoked murder; the other self-defense—a second application for a continuance to prove communicated threats made by the deceased should have been granted * * *, though * * * it was somewhat cumulative." Citing Gilcrease v. State, 33 Tex. Cr. R. 619. He further said, "From the rules enunciated under the decisions, we are of the opinion that the court should have granted a new trial on the ground of newly discovered evidence." To the same effect is the decision of the Court in the case of An-

derson v. State, 139 S. W. (2d) 809. In the instant case, the claimed threat was not communicated to appellant, nevertheless, if it was made, it disclosed the intent of deceased, and what he would do in the event appellant declined or failed to vacate the premises. The question here under consideration was recently passed upon by this Court in the case of Henson v. State, 200 S. W. (2d) 1007, where a lengthy discussion thereof by a majority as well as a minority of this Court may be found recorded. It does not appear that the failure of the appellant to discover the testimony prior to the trial is due to any lack of diligence on his part or that of his attorneys. The motion was not controverted. We think that the motion should have been granted. See Burnham v. State, 28 S. W. (2d) 549.

Appellant next complains of the introduction in evidence of the deed from J. A. Dean, et al, to the deceased conveying the 110 acres of land to the deceased and his wife. He objected thereto on the ground that the deed had not been signed and acknowledged by all the interested parties and had not been delivered to the deceased at the time of the killing and therefore title had not passed. It is true that title to real estate does not pass until the deed of conveyance is delivered, but the deceased had reached an agreement with the true owners to purchase the land, the deed of conveyance had been acknowledged by J. A. Dean, delivered by him to the deceased who forwarded it to the other interested parties for execution. The deceased had taken actual possession of the land under the contract of purchase which, according to the testimony of the county attorney, was known to appellant. The wife of the deceased was interested in the land since her mother was dead and the deceased had acquired the interest of J. A. Dean. We think that under the facts of this case the deed was admissible in evidence to show that the deceased's act in trying to induce appellant to move was not a willful and arbitrary one but was made in good faith.

Appellant next contends that the court erred in declining to instruct the jury on the right of appellant to defend his home. We do not think the evidence raises such an issue. The deceased did not enter appellant's home, nor did he by word or act do anything which indicated that he was then intending to forcibly enter it or to injure or destroy the same. In the absence of any evidence fairly raising the issue, it is not error to decline to give an instruction on the subject. Appellant cites us to the case of French v. State, 117 S. W. 848; and the case of Wells v. State, 141 S. W. 96. In each of those cases the deceased, over

the protest of the accused was attempting to enter the home of appellant. In the instant case, the deceased was merely at or near the gate of appellant's yard fence not doing anything, either by act or word, which indicated that he intended to invade appellant's home.

The attorneys for appellant are to be commended for their painstaking services to appellant without compensation.

For the error herein pointed out, the judgment of the trial court is reversed and the cause remanded.

Opinion approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State has filed a motion for rehearing insisting that we are in error in reversing the judgment for refusal of the trial court to grant a new trial for newly discovered evidence .

It is quite clear from the entire record that it was the theory of the State that Crenshaw had become incensed at deceased, Hammond, because the latter was insisting upon Crenshaw moving from the place, and that he was the aggressor, and killed Hammond for the sole reason of his insistence that Crenshaw move. It was appellant's theory that Hammond was not only insisting upon Crenshaw moving from the place, but that Hammond had made repeated threats to kill Crenshaw or to do him personal violence if he did not move; and that on the occasion of the killing Hammond made a demonstration as though to carry these threats into execution, and that Crenshaw acted in self-defense from apparent danger. Crenshaw claimed that he thought Hammond was armed, but it was discovered after the killing that he had no pistol or other weapon in his pocket, as Crenshaw claimed to believe.

Mrs. Smith testified that about a month and a half or two months prior to November 1, 1946, she heard Hammond tell Crenshaw "* * * that if he didn't quit trying to boss the place he was going to have to move, and Mr. Crenshaw said he would kill anybody that tried to make him move. * * *"

Recil Beekman testified that on Tuesday before the killing on Sunday, in the presence of witness' wife and Hammond and his wife, witness heard deceased say "* * * he was going to kick

Polk Crenshaw's goddam ass out in the road.* * *" This statement was categorically denied by Mrs. Hammond, who asserted that her husband in fact said, "* * * if Uncle Polk didn't behave he was going to have the Sheriff put him off."

Beekman's wife was not called as a witness to give her version of the conversation. She was a niece of Crenshaw's wife.

The State proved by two Deputy Sheriffs and the County Attorney of Falls County that Crenshaw came to them complaining that Hammond was insisting that he (Crenshaw) move, and that this disturbed Crenshaw's wife, who was ill, and that he wanted the witnesses to see if they could get Hammond to quit urging Crenshaw to move. He never told any of the witnesses that deceased had made threats to kill him.

With the record in that condition, appellant sought a new trial for the newly discovered evidence of witness Eakin, who would have testified as set out at length in the original opinion. That Crenshaw has brought himself clearly within the rule as to newly discovered evidence as to the witness Eakin is undisputed.

If Beekman can be regarded as a distinterested witness,— whose testimony was directly controverted by Mrs. Hammond— he is the only witness outside of Crenshaw and his wife who testified to any acts of violence or threats of any character by Hammond against Crenshaw.

The pivotal issue for the jury to determine was which of these parties was the aggressor. The statement from Branch's Ann. Tex. P. C., Sec. 2092, referred to, and quoted in Anderson v. State, 139 S. W. (2d) 809, is as follows: " 'Where it was a vital question as to who began the difficulty or who was most likely the aggressor, a new trial should be granted for newly discovered evidence of uncommunicated threats.' "

The foregoing statement has been given application in so many cases it seems unnecessary here to cite authorities, but we do refer to Pape v. State, 54 Tex. Cr. R. 462, and cases cited therein, which hold, in substance, that if the testimony leaves it doubtful as to who began the difficulty, threats of the alleged injured party, made against the accused, is legitimate evidence, and may become of a most material character in assisting the jury to arrive at a correct conclusion as to who in fact did begin the difficulty, because the fact that such threats had

been made would tend to show an attempt to execute them probable if the opportunity was offered, and the more ready belief of the accused would be justified to the precise extent of this probability.

The main evidence regarding acts of violence and threats claimed to have been made by Hammond coming from Crenshaw and his wife, who are unquestionably interested witnesses, makes it doubly important that the jury should hear the testimony of the newly discovered witness Eakin in order that the jury might appraise that testimony in connection with the claim of Crenshaw that he was acting against apparent danger, in view of the threats which he claims had been made. We discover nothing in the record which challenges the truthfulness of the statement of Eakin. He was a stranger to Hammond. He did not even know who Hammond was when he got in the car with him.

The case of Henson v. State, 200 S. W. (2d) 1007, cited in the original opinion, was doubtless cited because of this expression in the opinion on rehearing.

"* * * where the proposed evidence is in consonance with that of appellant and his wife, and *being the only disinterested witness upon the vital issue* * * * we think the trial court fell into error in concluding, if it did, that the proposed new evidence would not likely change the result upon another trial. * * *" (Italics ours.)

For the reasons indicated we are confirmed in our view that the learned trial judge fell into error in not granting a new trial for newly discovered evidence.

The motion for rehearing is overruled.