TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00606-CR







Alexander Flores Escobar, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. B-95-0518-S, HONORABLE BARBARA WALTHER, JUDGE PRESIDING








 Appellant Alexander Flores Escobar was indicted for aggravated assault with a deadly
weapon. See Tex. Penal Code Ann. § 22.02(a)(2) (West 1994). The jury found appellant guilty and also
found that he had been previously convicted of two prior felony offenses as alleged in the indictment. The
jury assessed punishment at fifty years' imprisonment.


Point of Error



 Appellant advances a sole point of error. He contends that the trial court erred in
overruling his motion for new trial based on newly discovered evidence. He argues that the evidence,
previously unknown to him, was admissible and material, was not cumulative, corroborative, collateral or
impeaching, and would probably produce a different result on a new trial.


Background



 The record shows that on June 23, 1995, appellant attacked and cut Jose Luis Torres in
the face with a knife. Torres testified that when he first moved to San Angelo appellant was his next door
neighbor on Concho Street. Torres later moved to apartment #8 on the second floor at 218 Abe Street.

 Torres related that he came home from work on the afternoon of June 23rd. He had no
air conditioning so he left the door to his apartment open as it was hot. Torres then went downstairs
because his downstairs neighbors had asked him to have supper with them. They were barbequing,
apparently outside. Torres revealed that Ajelia, who was appellant's girlfriend or wife, appeared in the
alley and asked to use a restroom. Someone took her to a restroom. Later Torres's son, Richard, arrived
at the neighbors' apartment and was invited to join them for supper. Still later, Torres's nephew, Jesse,
appeared on the scene and informed Torres that a man and a woman were in his apartment upstairs and
they were arguing.

 Torres, Richard, and Jesse went upstairs and found the door locked or chained on the
inside. Torres heard a woman screaming. He knocked on the door and demanded that it be opened. 
Appellant opened the door and Torres saw Ajelia, whose last name he did not know, in the room behind
appellant. Torres asked appellant what he was doing in Torres' apartment. Appellant accused Torres of
having an affair with Ajelia. Torres denied the accusation and told appellant that he did not know that she
was in his apartment. An argument ensued and appellant took his knife and cut Torres in the face. While
Torres tried to stop the flow of blood, appellant went downstairs and left the building. Ajelia followed him. 
Richard and Jesse in their testimony expressly denied that they or any one else blocked or tried to block
appellant's exit. Richard stated that once outside the building appellant continued to beat Ajelia, threw her
against a truck, and then stabbed her. When someone said the police had been called, appellant fled the
scene. Richard and Jesse followed him. Another confrontation was about to occur when the police arrived
and arrested appellant.


Motion for New Trial



 Appellant filed a motion for new trial claiming that he had the newly discovered testimony
of Ajelia Palacio, who had not testified at trial. 

 At the hearing on the motion for new trial, Ajelia testified that she had lived with appellant
for about four years; that on June 23, 1995, she had gone to a store to use the pay phone to call her sister
to ask to be picked up as she was leaving appellant; and that Joe Torres had followed her to the store. She
explained that she knew Torres as a former neighbor and was a good friend of his ex-wife. Torres opened
the door to his apartment because she did not have any other place to go. Ajelia revealed that appellant
came to the apartment and they were about to leave together when Torres, Richard, and another man
blocked their way; that Richard pushed appellant; and that Torres cut appellant with a knife on the back
of appellant's hand. She did not see appellant cut Torres, but claimed appellant acted in self-defense. She
denied that appellant had mistreated her, hit her, or stabbed her. She claimed that Torres and the other
men were intoxicated. She admitted that she and appellant were also intoxicated, "but not that much." 

 Ajelia acknowledged that she told appellant's first attorney in February 1996 that appellant
had started the fight with Torres. She explained that at the time she and appellant were separated and she
was "mad" at him. She declared that she lied to the attorney. (1) She knew that there was to be a trial but
did not know when it was to occur. The record is not clear as to just when Ajelia Palacio learned that
appellant had been tried and convicted. She related that at all pertinent times she lived with her sister on
Volney Street in San Angelo. She acknowledged that she read newspaper accounts of the trial and knew
the State's witnesses were not telling the truth. David Elliott, a former employer and friend, later informed
her of appellant's conviction. Thereafter, she came forward to testify at the hearing on the motion for new
trial.

 The State asked the trial court to take "judicial notice" of the photographs introduced at
trial which showed no cuts on the back of appellant's hands. The trial court agreed to examine the
photographs. No objection was offered.

 At the conclusion of the hearing, appellant argued that the requirements of a motion for new
trial based on newly discovered evidence had been met. He urged that Ajelia Palacio's testimony raised
the issue of self-defense which had not been presented at trial and that it could probably produce a different
result at a new trial. (2) The motion was overruled.


Applicable Law



 Motions for new trial based on newly discovered evidence are not favored by the courts
and are viewed with great caution. Drew v. State, 743 S.W.2d 207, 225-26 (Tex. Crim. App. 1987),
cert. denied, 114 S. Ct. 1207 (1994); State v. Davenport; 866 S.W.2d 767, 771 (Tex. App.--San
Antonio 1993, no pet.). The standard of review for the denial of a motion for new trial based on newly
discovered evidence is abuse of discretion. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995);
State v. Gonzales, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993). An appellate court does not substitute
its judgment for that of the trial court, but rather decides whether the trial court's decision was arbitrary or
unreasonable. Drew, 743 S.W.2d at 225-26; Ashcraft v. State, 918 S.W.2d 648, 652 (Tex.
App.--Waco 1996, pet. ref'd).

 The requirements for obtaining a new trial based on newly discovered evidence are: (1)
the newly discovered evidence was unknown to the movant at the time of his trial; (2) the movant's failure
to discover the evidence was not due to his want of diligence; (3) the evidence was admissible and not
merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence was probably true and
would probably bring about a different result in another trial. See Moore v. State, 882 S.W.2d 844, 849
(Tex. Crim. App. 1994); Driggers v. State, 940 S.W.2d 699, 708 (Tex. App.--Texarkana 1996, pet.
ref'd); see also Tex. Code Crim. Proc. Ann. art. 40.001 (West Supp. 1998); cf. Drew, 743 S.W.2d at
226.

 In all "new evidence" cases, the credibility of the witnesses and the probable truth of the
new evidence is primarily a determination for the trial court. Etter v. State, 679 S.W.2d 511, 515 (Tex.
Crim. App. 1984); Ashcraft, 918 S.W.2d at 653. With respect to the third and fourth requirements, (3)
"should it appear to the trial court that under the circumstances of the particular case the credibility or
weight of the new evidence is not such as would probably bring about a different result upon a new trial,
it is within the trial court's discretion to deny the motion." Jones v. State, 711 S.W.2d 35, 37 (Tex. Crim.
App. 1986). Whether the newly discovered evidence would likely produce a different result at a new trial
must be viewed in light of the whole case. Elledge v. State, 890 S.W.2d 843, 846 (Tex. App.--Austin
1994, pet. ref'd). 

Conclusion


 Ajelia Palacio told the trial court that she was telling the truth at the hearing and lied to
appellant's first attorney when she spoke to him in February 1996. She was "mad" at appellant at that
time, but was now willing to testify for the man with whom she lived for four years. She claimed that she
did not know when appellant's trial occurred but recalled reading newspaper accounts thereof. Her earlier
statements to appellant's counsel were consistent with the trial testimony of the State's witnesses. The
State claims that her current testimony would largely be used for impeachment purposes in any new trial. 
Appellant states he did not raise the issue of self defense at trial but is entitled to a new trial so the issue can
be raised by Ajelia Palacio's testimony. Appellant cites and relies upon Carlisle v. State, 549 S.W.2d
698 (Tex. Crim. App. 1977) and Crenshaw v. State, 208 S.W.2d 647 (Tex. Crim. App. 1948). These
cases are clearly distinguishable on their facts from the instant case. Appellant's reliance is misplaced. The trial court, being the judge of the credibility of the witnesses and the weight of the
testimony, had to determine whether the new evidence would likely produce a different result in a new trial. 
We conclude the trial court did not abuse its discretion. The sole point of error is overruled.

 The judgment is affirmed.


 

 John F. Onion, Jr., Justice

Before Chief Justice Carroll, Justices Jones and Onion*

Affirmed

Filed: January 8, 1998

Do Not Publish




* Before John F. Onion, Jr. Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The affidavit of Gonzalo Rios, appellant's first attorney, was attached to the new trial motion. It
reflected that he had interviewed Ajelia Palacio on February 14, 1996, several months before appellant's
July 1996 trial. She refused to help appellant, claimed that he was the aggressor in the fight in which he cut
Torres, and that he had beaten her on the occasion in question.


 Jon Mark Hogg, appellant's trial counsel, stated in his affidavit that he had attorney Rios's case file
and tried to locate Ajelia Palacio. She telephoned him on May 16, 1996, and stated that she did not want
to be involved in the case. The next day she did not keep the appointment she made with Hogg, and he
thereafter was unable to locate her. The affidavits of the two attorneys were attached to the motion for new
trial and constituted a part of the pleadings. We do not find they were introduced into evidence. See
Duggard v. State, 688 S.W.2d 524, 528 (Tex. Crim. App. 1985).
2. On appeal, appellant explains that at trial he did not raise the issue of self defense by his own
testimony because of his two prior felony convictions which could have been used for impeachment
purposes.
3. Appellant knew of the witness prior to trial but not that her testimony would be favorable to appellant. 
In fact, the contrary appears. We need not, however, decide this case on the basis of the first two
requirements.



s not such as would probably bring about a different result upon a new trial,
it is within the trial court's discretion to deny the motion." Jones v. State, 711 S.W.2d 35, 37 (Tex. Crim.
App. 1986). Whether the newly discovered evidence would likely produce a different result at a new trial
must be viewed in light of the whole case. Elledge v. State, 890 S.W.2d 843, 846 (Tex. App.--Austin
1994, pet. ref'd). 

Conclusion


 Ajelia Palacio told the trial court that she was telling the truth at the hearing and lied to
appellant's first attorney when she spoke to him in February 1996. She was "mad" at appellant at that
time, but was now willing to testify for the man with whom she lived for four years. She claimed that she
did not know when appellant's trial occurred but recalled reading newspaper accounts thereof. Her earlier
statements to appellant's counsel were consistent with the trial testimony of the State's witnesses. The
State claims that her current testimony would largely be used for impeachment purposes in any new trial. 
Appellant states he did not raise the issue of self defense at trial but is entitled to a new trial so the issue can
be raised by Ajelia Palacio's testimony. Appellant cites and relies upon Carlisle v. State, 549 S.W.2d
698 (Tex. Crim. App. 1977) and Crenshaw v. State, 208 S.W.2d 647 (Tex. Crim. App. 1948). These
cases are clearly distinguishable on their facts from the instant case. Appellant's reliance is misplaced. The trial court, being the judge of the credibility of the witnesses and the weight of the
testimony, had to determine whether the new evidence would likely produce a different result in a new trial. 
We conclude the trial court did not abuse its discretion. The sole point of error is overruled.

 The judgment is affirmed.


 

 John F. Onion, Jr., Justice

Before Chief Justice Carroll, Justices Jones and Onion*

Affirmed

Filed: January 8, 1998

Do Not Publish




* Before John F. Onion, Jr. Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The affidavit of Gonzalo Rios, appellant's first attorney, was attached to the new trial motion. It
reflected that he had interviewed Ajelia Palacio on February 14, 1996, several months before appellant's
July 1996 trial. She refused to help appellant, claimed that he was the aggressor in the fight in which he cut
Torres, and that he had beaten her on the occasion in question.


 Jon Mark Hogg, appellant's trial counsel, stated in his affidavit that he had attorney Rios's case file
and tried to locate Ajelia Palacio. She telephoned him on May 16, 1996, and stated that she did not want
to be involved in the case. The next day she did not keep the appointment she made with Hogg, and he
thereafter was unable to locate her. The affidavits of the two